## COLGATE–PALMOLIVE–PEET CO. v. UNITED STATES (two cases).

### No. 2, Civ. A. No. 58.

District Court, D. Delaware.

March 20, 1941.

pine Islands. This tax is imposed by section 602½, c. 277, of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Int.Rev. Acts, page 778.

In suit No. 2 plaintiff seeks to recover $1,476,507.81 paid as tax on the processing or use of oils from May 10, 1934 to April 31, 1935, with interest. In suit No. 58 plaintiff seeks to recover $885,874.56 paid as tax on the processing or use of oils from May 1, 1935 to January 31, 1937, with interest. The two suits are consolidated for trial. The material facts are stipulated.

Plaintiff is a Delaware corporation with its principal office and place of business in Jersey City, New Jersey. It manufactures and sell soaps and other products. In that manufacture it uses cocoanut oil and the other oils. May 10, 1934, the effective date of section 602½, plaintiff had on hand 78,746,079 pounds of oil (49,-216,927 pounds of oil covered in suit No. 2 and the balance of 29,529,152 pounds covered in suit No. 58). Before that date these oils had been processed one or more times in the United States. After that date these oils were subjected to further processing or uses by plaintiff in the manufacture of articles for sale. Plaintiff reported the amounts of oils processed and paid a processing tax with respect to the first processing occurring after May 10, 1934. Such taxes were paid under protest. Claims for refund were filed and rejected by the Commissioner.

Section 602½ of the Revenue Act of 1934 imposing a "Processing Tax on Certain Oils" provides in part: "(a) There is hereby imposed upon the first domestic processing of coconut oil, sesame oil, palm oil, palm kernal [kernel] oil, or sunflower oil, or of any combination or mixture containing a substantial quantity of any one or more of such oils with respect to any of which oils there has been no previous first domestic processing, a tax of 3 cents per pound, to be paid by the processor. There is hereby imposed (in addition to the tax imposed by the preceding sentence) a tax of 2 cents per pound, to be paid by the processor, upon the first domestic processing of coconut oil or of any combination or mixture containing a substantial quantity of coconut oil with respect to which oil there has been no previous first domestic processing, except that the tax imposed by this sentence shall not apply when it is established, in accordance with regulations prescribed by the Commissioner with the

Thomas G. Haight, Albert C. Wall, and Edward J. O'Mara (of Wall, Haight, Carey & Hartpence), all of Jersey City, N. J., and E. Ennalls Berl (of Southerland, Berl, Potter & Leahy), of Wilmington, Del., for plaintiff.

Stewart Lynch, U. S. Atty., of Wilmington, Del., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Thomas G. Carney, Sp. Assts. to Atty. Gen., for defendant.

NIELDS, District Judge.

These suits are for the recovery of internal revenue taxes alleged to have been illegally assessed and collected, together with interest. The suits are based on Sec. 24, Par. 20 of the Judicial Code, as amended. 28 U.S.C.A. § 41 (20).

The subject of the tax is the processing or use of cocoanut oil, palm oil, palm kernel oil and sunflower seed oil, hereinafter referred to as "oils". Cocoanut oil is made from products grown in the Philip-

approval of the Secretary, that such coconut oil (whether or not contained in such a combination or mixture) * * *. All taxes collected under this section with respect to coconut oil wholly of Philippine production or produced from materials wholly of Philippine growth or production, shall be held as a separate fund and paid to the Treasury of the Philippine Islands, but if at any time the Philippine Government provides by any law for any subsidy to be paid to the producers of copra, coconut oil, or allied products, no further payments to the Philippine Treasury shall be made under this subsection. For the purposes of this section the term 'first domestic processing' means the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, but does not include the use of palm oil in the manufacture of tin plate."

This case turns upon whether "first domestic processing" in section 602½ means the first domestic processing occurring after the enactment of the statute.

Section 602½ of the Revenue Act of 1934 became effective May 10, 1934. It imposes a processing tax upon the first domestic processing of said oils, or of any combination or mixture containing a substantial quantity of any one or more of such oils where there has been no previous first domestic processing with respect to any one of such oils. The section defines the term "first domestic processing" to mean "the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, * * *."

By section 602½ (f) of the Revenue Act, all provisions of law respecting taxes imposed by section 600 of the Revenue Act of 1926 are made applicable to the taxes imposed by section 602½. Under section 1101 of the Revenue Act of 1926, 26 U.S. C.A. Int.Rev.Acts, page 315, the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, was authorized to prescribe and publish all needful rules and regulations for the enforcement of the processing tax act. August 17, 1934 the Commissioner promulgated regulations 48 relating to the processing tax on the oils under section 602½. Article (1) of regulations 48 provides: "(1) First domestic processing means the first use in the United States on or after

the effective date of the Act. At all times in these regulations, the term processing or first domestic processing will be deemed to be synonymous with 'use' or 'first use in the United States on or after the effective date' respectively, and will include the meanings implied in the latter terms by subdivision (k) above."

The claims for refund contain the following statements: "On the effective date of said Act taxpayer had on hand certain palm oil, cocoanut oil, palm kernel oil and sunflower oil which had, prior to said date, been bleached and/or refined in the United States in the manufacture or production of an article intended for sale. Such bleaching and/or refining in the United States prior to said date constituted the first domestic processing of such oils within the contemplation of said Section 602½, and any subsequent processing or use of said oils was not subject to the tax imposed by said Section. The tax has been assessed and collected from the taxpayer with respect to the subsequent processing or use each month of such bleached and/or refined oils and taxpayer has heretofore filed with the Collector of Internal Revenue, Fifth District of New Jersey, a protest each month against the payment of said tax on such oils, * * *."

The claims also contained the following statement:

"Regulations 48 issued by the Commissioner of Internal Revenue and approved by the Secretary of the Treasury construe the term 'first domestic processing' as used in Section 602½ to mean, with respect to said oils not previously taxed, any use in the United States on and after the effective date of the tax in the manufacture of an article for sale, notwithstanding that said Section in explicit language defines said term to mean the 'first use in the United States, in the manufacture or production of an article intended for sale,' etc. Any attempt to broaden the scope of said Section by said regulations is wholly unwarranted, illegal and void."

These claims for refund were rejected by the Commissioner. The grounds alleged in the complaints follow the grounds asserted in the claims for refund.

 Laws refer only to transactions occurring after their enactment, unless they expressly provide otherwise. This is a well-settled rule. Applying the rule to the facts of this case, it is clear that in levying a tax on the "first domestic proc-

essing" of the oils section 602½ refers to the first domestic processing occurring after the section became law. This deduction follows from considering the vital words of the statute alone.

The meaning of section 602½ appears free from doubt. However, if an interpretation of its meaning is required, that interpretation has been furnished by the Commissioner in his regulations. This interpretation has been approved by the Congress. The parties have agreed that the oils in question were domestically processed before the effective date of the act and also domestically processed after the effective date of the act. The question recurs: Does the word "first" mean the first domestic processing in point of fact whether before or after the effective date of the act or the first domestic processing after the effective date of the act regardless of prior processings?

 Every statute operates on future acts unless a contrary intent is expressly declared. The Supreme Court has so stated in an unbroken line of cases from the earliest days to the present.

" * * * a law is presumed, in the absence of clear expression to the contrary, to operate prospectively; * * *." Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 565, 82 L.Ed. 858.

Thus, when section 602½ levies a tax upon a "first" processing, the first processing after its effective date is the subject of the tax. The statute does not concern itself with what occurred before its effective date. Processing the oil before the effective date did not change the identity of the oil. It was still oil susceptible of processing. The rule of interpretation of taxing statutes is: "Conceding the rule of interpretation of taxing statutes to be that in case of doubt they are to be construed most strictly against the government and in favor of the taxpayer * * *, still the language used must be given its usual and ordinary meaning, keeping in mind the subject-matter to which it relates. It cannot under the rule of interpretation be strained beyond the breaking point in the interest of taxpayers * * * [nor] beyond the sense in which it was used by Congress." Merriman v. Commissioner of Internal Revenue, 1 Cir., 55 F.2d 879, 880.

The last part of the first sentence of section 602½ provides that the tax is imposed upon the processing "of any com-bination or mixture containing a substantial quantity of any one or more of such oils with respect to any of which oils there has been no previous first domestic processing". Congress had two purposes in view: (1) to defeat avoidance of the tax and (2) to avoid double taxation. In the absence of this provision, it would have been easy for exporters or domestic processors to mix the oil with some other product and to contend that the mixed article processed was not oil since it contained other ingredients. Moreover the same oil might be taxed twice—first when first domestically processed as oil and second when in a combined or mixed form. To correct these objections, the mixtures to be taxed were confined to those containing oil where there had been no previous first domestic processing. The Second Circuit held that previous "first" meant previous "taxable" and that the use of the word "first" in the section obviously meant the first domestic processing occurring after the effective date of the act rather than the first processing in point of fact in the United States. Loose-Wiles Biscuit Co. v. Rasquin, 2 Cir., 95 F.2d 438. Certiorari denied, 305 U.S. 611, 59 S.Ct. 70, 83 L.Ed. 389.

Subsection (e) of section 602½ provides that if any person, prior to January 26, 1934, had made a bona fide contract for the sale of any article on or after the effective date of section 602½, wholly or in chief value of an article with respect to which the tax was imposed, and if such contract did not permit the addition to the amount to be paid thereunder of the whole of such tax then, unless the contract expressly prohibited such addition, the buyer should pay so much of the tax as was not permitted to be added to the contract price. Taxes payable by the buyer in such circumstances were to be paid to the seller at the time the sale was consummated and were to be paid over by the seller to the United States. It is thus evident Congress intended that oils already in the country as well as oils to enter the country should not escape the tax.

 The regulations of the Commissioner of Internal Revenue interpreting section 602½ are valid. The Commissioner has authority to construe and issue formal regulations construing internal revenue laws passed by Congress. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Massachusetts Mutual Life Ins. Co.

v. United States, 288 U.S. 269, 53 S.Ct. 337, 77 L.Ed. 739; Fawcus Machine Co. v. United States, 282 U.S. 375, 51 S.Ct. 144, 75 L.Ed. 397. Since the issuance of Regulations 48 Congress has three times enacted legislation directly relating to this tax without disapproving the treasury interpretation and application of the tax to the first domestic processing occurring after the effective date of section 602½. In fact, Congress has enacted four Revenue Acts, since the Revenue Act of 1934, in three of which section 602½ was specifically amended without any indication that Congress disapproved the Commissioner's regulations relative to section 602½. On the contrary, the qualifying amendment in section 702(a) of the 1936 act indicates specific approval and adoption of the Commissioner's interpretation.

Each complaint must be dismissed.