## COLGATE–PALMOLIVE–PEET CO. v. UNITED STATES.

### Nos. 7791, 7792.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 23, 1941.

Decided March 31, 1942.

On Rehearing Aug. 21, 1942.

As Amended on Denial of Second Petition for Rehearing Nov. 11, 1942.

914

Thomas G. Haight, of Jersey City, N. J. (E. Ennalls Berl, of Wilmington, Del., Albert C. Wall and Mason Trowbridge, both of Jersey City, N. J., Blevins C. Dunklin, of Bronxville, N. Y., and Edward J. O'Mara, of Jersey City, N. J., on the brief) for appellant.

Alvin J. Rockwell, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Sp. Asst. to Atty. Gen., and Charles Stewart Lynch, U. S. Atty., of Wilmington, Del., on the brief), for respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The question presented for our determination by the appeals at bar is the construction of Section 602½, c. 277 of the Revenue Act of 1934, 48 Stat. 680, 26 U.S.C.A. Internal Revenue Acts page 778.

The appellant makes soaps and other products and uses coconut oil, palm oil and other oils in their manufacture. On May 10, 1934, the effective date of Section 602½, it had on hand over 78,000,000 pounds of coconut and other oils referred to in the statute which had received one or more domestic processings. After the effective date of the statute these oils were subjected to further processings by the appellant in the manufacture of products intended for sale. The appellant paid the taxes and made claims for refunds which were rejected by the Commissioner. The appellant then sued the United States.

The court below held that the phrases of the statute, "first domestic processing" and "first use", mean the first domestic processing or first use in the United States after the effective date of the act. See Colgate-Palmolive-Peet Co. v. United States, D.C., 37 F.Supp. 794. The pertinent portions of Section 602½ are set out in the margin.[1] There is no dispute

---

[1] Section 602½ provides:

"Processing Tax on Certain Oils.

"(a) There is hereby imposed upon the first domestic processing of coconut oil, sesame oil, palm oil, palm kernal oil, or sunflower oil, or of any combination or mixture containing a substantial quantity of any one or more of such oils with respect to any of which oils there has been no previous first domestic processing, a tax of 3 cents per pound, to be paid by the processor. There is hereby imposed (in addition to the tax imposed by the preceding sentence) a tax of 2 cents per pound, to be paid by the processor, upon the first domestic processing of coconut oil or of any combination or mixture containing a substantial quantity of coconut oil with respect to which oil there has been no previous first domestic processing, except that the tax imposed by this sentence shall not apply when it is established, in accordance with regulations prescribed by the Commissioner with the approval of the Secretary, that such coconut oil (whether or not contained in such a combination or mixture), (A) is wholly the production of the Philippine Islands or any other possession of the United States, or (B) was produced wholly from materials the growth or production of the Philippine Islands or

bétween the parties as to the meaning of the phrases "domestic processing" or "use in the United States". All concede that the oils subjected to the tax, were processed in the United States both before and after the effective date of the act. The dispute arises as to the meaning of the phrase "the first" as used throughout the statute.

The appellant makes a number of contentions. It refers to the word "first" as defined in Funk & Wagnalls New Standard Dictionary, 1938, as meaning "Prior to all others in time or occurrence; earliest, as the first snow of the season." To this may be added the definition contained in Webster's New International Dictionary, Second Edition, viz., "Preceding all others; foremost;—used as an ordinal of one; as (a) earliest in time or succession;—said of either the past or future, as he was the first to come; the first train leaves at noon; my first voyage; the first year of Independence; (b) foremost in position;—in front of or in advance of all others; as first in the race; * * *" The appellant urges that if the modifying adjective "first"

be given its ordinary or normal meaning it must refer to the earliest use or processing in the United States, that which precedes all others in point of time. This interpretation, says the appellant, is the same as that which the Treasury Department put upon the phrase, "the first domestic processing" used in Section 9(a) of the Agricultural Adjustment Act, approved May 12, 1933, c. 25, 48 Stat. 31, 7 U.S.C.A. § 609(a). The appellant contends that Section 602½ of the Revenue Act of 1934 was derived from Section 9(a) of the Agricultural Adjustment Act.

■ We entertain little doubt that the provisions of Section 602½ were derived largely from Section 9(a). The Treasury Regulations (Article 7 of Treasury Regulations 81, approved July 12, 1933) and the amendments thereto promulgated by the Treasury Department in connection with Section 9(a) of the Agricultural Adjustment Act bear out the appellant's assertion that the Treasury Department construed the phrase "the first domestic processing" to mean the first in point of time.[2] If the provisions of Sections 9(a) and 602½ are

any other possession of the United States, or (C) was brought into the United States on or before the 30th day after the date of the enactment of this Act or produced from materials brought into the United States on or before the 30th day after the date of enactment of this Act, or (D) was purchased under a bona fide contract entered into prior to April 26, 1934, or produced from materials purchased under a bona fide contract entered into prior to April 26, 1934. All taxes collected under this section with respect to coconut oil wholly of Philippine production or produced from materials wholly of Philippine growth or production, shall be held as a separate fund and paid to the Treasury of the Philippine Islands, but if at any time the Philippine Government provides by any law for any subsidy to be paid to the producers of copra, coconut oil, or allied products, no further payments to the Philippine Treasury shall be made under this subsection. For the purposes of this section the term 'first domestic processing' means the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, but does not include the use of palm oil in the manufacture of tin plate."

Subdivision (1) of Article 1 of Regulations 48 provides: "(1) First domestic

processing means the first use in the United States on or after the effective date of the Act. At all times in these regulations, the term processing or first domestic processing will be deemed to be synonymous with 'use' or 'first use in the United States on or after the effective date', respectively, and will include the meanings implied in the latter terms by subdivision (k) above."

[2] Article 7 of Regulations 81, approved July 12, 1933, promulgated under the Agricultural Adjustment Act provides: "When tax attaches.—The tax attaches upon the first domestic processing of the commodity. Where some part of the first domestic processing of a particular quantity of the commodity takes place during the period when the tax is effective, the tax attaches notwithstanding that some portion of the first domestic processing of such quantity takes place before or after such period."

The foregoing was amended on September 20, 1933 by T. D. 4392, Article 7 (See C.B. XII-2, p. 430) to read as follows: "When tax attaches.—The tax attaches at the beginning of the first domestic processing of the commodity. When the first domestic processing begins before the effective date, no tax attaches, although it is not completed until after the effective date. When the first domestic processing begins while the tax is in

deemed to be in pari materia the two sections should be interpreted similarly. While the Agricultural Adjustment Act placed a floor tax upon commodities already processed. (See Supplementary Revenue Provisions of the Agricultural Adjustment Act, Section 16(a), c. 25, 48 Stat. 40, 7 U.S.C.A. § 616(a), and the last regulation cited in note 2 supra), Congress did not impose any floor tax under the Revenue Act of 1934. Because of this Section 9(a) and Section 602½ cannot be deemed to be in pari materia even if the commodities named in Section 9(a) be deemed to be the equivalent for tax purposes of the oils referred to in Section 602½.

The appellant contends that the history of the section shows that it was the purpose of Congress to protect domestic farm products against competitive oils brought into this country by levying a compensating tax on the first actual use of such oils within the United States. The appellant takes the position that Congress did not intend to tax any processing after the first processing in point of time in the United States because such a tax would not effectuate the purpose of Section 602½ which is a substitute for an impost. The appellant points out that when the Revenue Act of 1928, 45 Stat. 791, 26 U.S.C.A. Int.Rev. Acts, page 351, et seq., was under consideration unsuccessful attempts were made by members of Congress from agricultural and cattle-raising states to impose duties upon imported competitive oils including coconut oil. These proposed amendments were rejected.[3] In 1929 when the Tariff Act of 1930, 46 Stat. 590, 19 U.S.C.A. § 1001, et seq., was again before Congress, amendments were offered to place imports upon competing foreign oils.[4] These proposals were not made law. When Congress had before it the Revenue Act of 1932, 47 Stat. 169, 26 U.S.C.A. Int.Rev. Acts, page 482 et seq., similar amendments were proposed but were rejected again.[5] During the Seventy-Second Congress a separate bill, H.R. 12,835, was introduced to provide an amendment to the Tariff Act of 1930 in order to impose a duty on such oils as were processed in the case at bar. This bill did not pass.

The continuous agitation for the protection of domestic farm products from duty-free coconut oil and other competitive vegetable oils resulted in the passage of the statute under consideration. See the statements of Congressman Schallenberger,[6] those of Congressman Knutson,[7] those of Senator Byrnes,[8] those of Senator Borah[9] and those of Senator Norris.[10] The fact that the Philippine Independence Act of March 24, 1934, c. 84, Section 6 (b), 48 Stat. 456, 459, 48 U.S.C.A. 1236(b), specifically authorized the importation free of duty of 200,000 long tons of Philippine coconut oil a year for ten years made it impossible for Congress to place an impost on Philippine coconut oil without a breach of faith. Congress, in order to protect the American farmer, but also to keep faith with the people of the Philippines, substituted for an impost upon Philippine oil the tax provided by Section 602½. It follows, says the appellant, that Congress intended the tax of 602½ to attach to the earliest use of the oils after entry into the United States and therefore Congress intended to levy the tax upon "the first domestic processing" in point of time.

---

effect, it is subject to the processing tax, notwithstanding it is not completed until after the tax is terminated."

Article 7 was again amended on November 2, 1933, by T. D. 4403 (See C.B. XII-2, p. 430) to be effective retroactively to July 9, 1933. Article 7 in its final form provides: "When tax attaches.— The tax is imposed upon the first domestic processing, and is measured by the amount of the commodity put into such processing. The tax attaches to a particular quantity of the commodity (1) if it is in process on the effective date, provided the first domestic processing has not been completed prior to that date, or (2) if the first domestic processing is begun during the period while the tax is in effect, provided it is completed before the termination of the tax. Where the first domestic processing of a particular quantity of the commodity is completed prior to the effective date, but on the effective date such quantity is in secondary processing, it is subject to the tax on floor stocks (see Regulations 82)."

[3] See Cong. Record, Vol. 69, pp. 8483, 9202.

[4] See Cong. Record, Vol. 71, p. 4914, et seq.; Vol. 72, pp. 5717, 5942.

[5] See Cong. Record, Vol. 75, pp. 10,249 et seq., 11,095–11,116.

[6] See Cong. Record, Vol. 78, p. 2529.

[7] See Cong. Record, Vol. 78, pp. 2614, 2615.

[8] See Cong. Record, Vol. 78, p. 6314.

[9] See Cong. Record, Vol. 78, p. 6316.

[10] See Cong. Record, Vol. 78, p. 6380.

Our difficulty in accepting these arguments lies in the fact that we can' see no reason why Congress should not have desired to protect domestic fats against competitive imported oils whether prior to the passage of the act these had been processed within the United States or not. Obviously Congress could have made its intention very plain by adding a very few words to the phrase "first domestic processing" such as "in point of time", if that body had in mind the end which the appellant contends it had. Upon the other hand if we take the literal meaning of the word "first", we must concede that it means in advance of all others, the earliest.

Two plain sign posts remain to guide us. First, as was stated by the learned trial judge a statute is presumed to operate on future acts unless the contrary intent is declared. See Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L. Ed. 858. A similar view was expressed by the Circuit Court of Appeals for the Second Circuit in Loose-Wiles Biscuit Co. v. Rasquin, 95 F.2d 438, 440, cert.den. 305 U.S. 611, 59 S.Ct. 70, 83 L.Ed. 389. The Court of Claims in the case of Tasty Baking Co. v. United States, 38 F.Supp. 844, reached a similar conclusion, though upon somewhat different reasoning. In our opinion the doctrine of the prospective operation of a statute has become so much a part of our law as to require Congress to employ plain words to overcome the presumption that a statute will so operate.

Second, Treasury Regulations 48 (see note 1, supra) construe the phrase "first domestic processing" as meaning the first use in the United States after the effective date of the Act. The defendant points out that these regulations were promulgated by the Treasury Department pursuant to the provisions of Section 1101 of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 315. See 44 Stat. 111. Sec. 602½(f) of the Revenue Act of 1934, 48 Stat. 764, provides that all provisions of Section 600 of the Revenue Act of 1926, 44 Stat. 93, 26 U.S.C.A. Int.Rev.Acts, page 275, not inconsistent with the provisions of Sec. 602½ of the Revenue Act of 1934 shall be applicable in respect to the taxes imposed by Section 602½. In effect, there-

fore, contends the defendant, Treasury Regulations 48 were made applicable to Section 602½ of the Revenue Act of 1934. Since the promulgation of the regulations referred to Congress on one occasion amended Section 602½ without any indication of disapproval of the interpretation of the Treasury Department as to the prospective operation of the statute. By Section 402 of the Revenue Act of 1935, 49 Stat. 1026, 26 U.S.C.A. Int.Rev.Acts, page 810, Congress imposed a compensatory tax upon the importation of articles produced from the oils named in Section 602½.

The United States claims similar approval by Congress by the enactment of Section 702 of the Revenue Act of 1936, 49 Stat. 1742, 26 U.S.C.A. Int.Rev.Acts, page 955, amending Section 602½(a). This contention cannot be sustained, however, because Congress made substantial changes in the wording of Section 602½ though it did refer specifically to the existing regulations in respect to definitions of combinations or mixtures.[11] This may indicate some degree of approval by Congress of the interpretation by the regulations of the prospective action of Section 602½(a) as enacted in the Revenue Act of 1934, but since the statute was not reenacted in identical language the rule of congressional confirmation enunciated by Brewster v. Gage, 280 U.S. 327, 337, 50 S. Ct. 115, 74 L.Ed. 457, and Massachusetts Mutual Life Ins. Co. v. United States, 288 U.S. 269, 273, 53 S.Ct. 337, 77 L.Ed. 739, cannot be applied.

We have given careful consideration to the appellant's argument in respect to the 1936 amendment. Put briefly it is as follows. As we have already indicated Section 702(a) of the 1936 Revenue Act amended Section 602½ of the Revenue Act of 1934. As the amendment was originally proposed by the Senate Finance Committee and passed by the Senate,[12] it stated in part, "There is hereby imposed upon the first domestic processing of coconut oil, palm oil * * *, fatty acids * * * (whether or not * * * refined * * * or otherwise processed), or any combination or mixture [thereof] * * *, with respect to any of which * * * there has been no previous first domestic processing and

[11] See S.Rep. No. 2156, 74th Cong., 2nd Sess. p. 30 (1939-1 Cum. Bull., (Part 678, 698)).

[12] See Cong. Rec. Vol. 80, p. 8786.

no import tax has been paid * * * a tax of 3 cents per pound to be paid by the processor." These words were apparently insufficient to express the intent of Congress for the bill was rewritten in committee and the words "taxed under this section" was added to the phrase "no previous domestic processing". The addition of this phrase, says the appellant, resulted in two classifications of "previous first domestic processings", viz., a class of those previous processings which had been taxed under the section and which, accordingly, must have occurred subsequent to the effective date of the Revenue Act of 1934, and a second class of previous first domestic processings not taxed under the section which could have occurred only prior to the effective date of the Revenue Act of 1934.

█ Study of the 1936 amendment leads, we think, to the opposite conclusion. Congress intended to tax oils of the designated classes or combinations which had not been previously taxed under Section 602½(a) or upon which an import tax had not been paid under Section 601(c) (8) of the Revenue Act of 1932. In short we think that the amendment shows it was the intention of Congress to tax the designated oils or combinations not previously taxed under the section, whether processed prior to the passage of the 1934 Act or not. It follows that Congress intended oils or combinations processed subsequent to the effective date of the 1934 Revenue Act to be taxed.

█ The question posed for our determination is a difficult one. Following the two sign posts to which we have referred we conclude that the District Court reached the right result.

Accordingly, the judgments are affirmed.

### On Rehearing.

After careful reconsideration of this case on reargument, a majority of the court feel constrained to reach the same decision as that expressed in our first opinion. The opinion, however, contains an error which should be corrected.

We stated in our opinion, "Since the promulgation of the regulations referred to [Treasury Regulations 48] Congress on one occasion amended Section 602½ [26 U.S.C.A. Int.Rev.Acts, page 778] without any indication of disapproval of the interpretation of the Treasury Department as to the prospective operation of the statute.", and we went on to say that Congress by Section 402 of the Revenue Act of 1935, 49 Stat. 1026, 26 U.S.C.A. Int.Rev.Acts, page 810, imposed a compensatory tax upon the importation of articles produced from the oils named in Section 602½. Obviously, the word "amended" was used erroneously. Congress did not amend Section 602½, but it dealt with a subject matter closely allied · to that contained in Section 602½ and in doing so indicated no disapproval of the interpretation put upon that section by the Treasury Department in Regulations 48.

After consideration of every point raised by the appellant we can perceive no reason why our prior decision should be altered. Accordingly the judgments will be affirmed.

MARIS, Circuit Judge (dissenting on rehearing).

After full consideration of the arguments advanced upon the rehearing of this case I find myself constrained to dissent from the judgment of the court. In my view the construction placed by the majority of the court upon Section 602½ of the Revenue Act of 1934 cannot be supported either by its language or by the intent of its framers as shown by its legislative history. I shall briefly set forth the reasons for my view.

In the first place the phrase "first domestic processing" seems to me to be wholly free from ambiguity. "First", when used as here in respect of time, means earliest in point of time. If no reference point in time is specified the reference must be to the beginning of time. The majority say that another reference point, the effective date of the act, was intended. But it is not so expressed in the act and I find no convincing evidence that Congress so intended.

The provisions of Section 602½ were derived largely from Section 9(a) of the Agricultural Adjustment Act of May 12, 1933, 7 U.S.C.A. § 609(a), and the phrase "first domestic processing" was taken verbatim therefrom. It is conceded that in the Agricultural Adjustment Act the word "first" was used in the absolute sense of earliest in time. I find nothing to indicate that Congress did not intend to use the word in the same sense when it included the phrase in Section 602½. Furthermore when Congress in the Revenue Act of 1936 amended Section 602½ it indicated by the use of the phrase "first domestic processing taxed under this section" that it recog-

nized that not all first domestic processings were taxable.

Secondly the legislative history of Section 602½ convinces me, as it convinced Judge Sullivan in Durkee Famous Foods v. Harrison, D.C.Ill.1942, 46 F.Supp. 642, that it was the purpose of Congress to protect domestic farm products against competition from specified oils which were brought from outside the United States, by levying a tax on their first use within the United States. As Judge Sullivan pointed out in the case just cited: "The Philippine Independence Act had been passed on March 24th, 1934, 48 U.S.C.A. § 1236 (b), specifically authorizing the importation, free of duty, of a designated amount of coconut oil each year for a period of ten years, thus precluding Congress from placing an import duty thereon. Therefore, the amendments to subdivision (a) of Section 602½, as adopted, provided for (1) a surtax of two cents per pound on coconut oil of non-Philippine origin; and (2) provided for the segregation and payment into the Philippine treasury of the entire tax collected on Philippine coconut oil. Tracing the progress of the oil processing tax statute from its inception as Section 602 of the Revenue Act of 1934 [26 U.S.C.A. Int.Rev.Acts, page 776], to its final enactment as Section 602½ thereof, the Congressional debates and reports all evidence the same legislative purpose of protecting the American farmers' products against oils brought in from outside the United States. The debates show that it was the intention of Congress, in enacting Section 602½, to extend to foreign oils the same type of processing tax as had already been levied upon the American farmers' products by the Agricultural Adjustment Act, * * * and to use such tax as a substitute for a protective tariff. * * * Congressional Record, Vol. 78, pages 2513–2529; 2614–2658; 6308–6324–6314–6316–6380."

The majority rely for their decision largely upon two guide posts but these do not seem to me to point to the conclusion which the majority reach. The first is the rule that a statute is presumed to operate prospectively unless the contrary intent is declared. I am quite willing to concede that this rule is applicable to Section 602½. Its application, however, should merely result in imposing the tax upon those processings within the statutory definition which actually took place after the effec-

tive date of the act, not in modifying the definition so as to impose the tax upon transactions which upon the normal application of the rule would have been exempt.

The second guide post to which the majority refer is Treasury Regulation 48 interpreting Section 602½. The regulation defines "first domestic processing" as "the first use in the United States on or after the effective date of the act." But the act itself defined "first domestic processing" as "the first use in the United States, in the manufacture or production of an article intended for sale, of the article with respect to which the tax is imposed, but does not include the use of palm oil in the manufacture of tin plate." It will be observed that in the statutory definition there is no suggestion of a reference to the effective date of the act. It seems to me that in importing such a reference the regulation goes beyond its rightful field of interpretation and into the realm of amendment. Consequently I think that the regulation is invalid and that its application violates the settled rule, to which, however, the courts too frequently pay only lip service, that ambiguities in a revenue statute must be construed strictly against the Government and that doubts therein must be resolved in favor of the taxpayer.