HASSETT, FORMER ACTING COLLECTOR, *v.*
WELCH ET AL., EXECUTORS.*

No. 375.  Argued February 1, 1938.—Decided February 28, 1938.

---

* Together with No. 484, *Helvering, Commissioner of Internal Revenue,* v. *Marshall, Administrator.*  On writ of certiorari to the Circuit Court of Appeals for the Second Circuit.

*Assistant Attorney General Morris,* with whom *Solicitor General Reed,* and *Messrs. Sewall Key* and *Arnold Raum* were on the briefs, for petitioners.

*Mr. William D. Mitchell,* with whom *Messrs. James Lenox Banks, Jr.,* and *George H. Craven* were on the brief, for respondent in No. 484.

*Messrs. John L. Hall* and *Claude R. Branch,* with whom *Messrs. Henry Hixon Meyer* and *Edward C. Thayer* were on the brief, for respondents in No. 375.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioners ask us to hold that § 302 (c) of the Revenue Act of 1926 [1] as amended by the Joint Resolution of Congress of March 3, 1931,[2] and § 803 (a) of the

---

[1] c. 27, 44 Stat. 9, 70; U. S. C. Tit. 26, § 411 (c).

[2] c. 454, 46 Stat. 1516; U. S. C. Tit. 26, § 411 (c).

Revenue Act of 1932,[3] includes in the gross estate of a decedent, for estate tax, property which, before the adoption of the amendments, was irrevocably transferred with reservation of a life estate to the transferor; and that, so applied, the statute does not offend the due process clause of the Fifth Amendment of the Constitution. The numerous cases pending in the courts and the Board of Tax Appeals involving these questions, and the claim that decisions of this court have not settled the matter, moved us to grant certiorari.

The respondents in No. 375 are executors under the will of a decedent who died November 20, 1932. On February 13, 1924, voluntarily and without valuable consideration, he transferred to a trustee property which he expected to receive under the will of his brother, reserving to himself the income for life, directing division of the income after his death between nephews and nieces and distribution of the corpus, upon the death of the survivor of them, amongst their then living issue. After his brother's death, and on October 22, 1926, he duly ratified and confirmed the original trust instrument. The Commissioner ruled that the value of the trust assets should be included in the decedent's gross estate, in the view that the transfer was testamentary, because made in contemplation of death, or intended to take effect in possession or enjoyment at or after death, within the meaning of § 302 (c) of the Revenue Act of 1926. The respondents paid the resulting tax and sued for refund in the District Court of Massachusetts. Judgment went for the Collector.[4] The Circuit Court of Appeals held that the District Court erred in concluding that the transfer was made in contemplation of death or was intended to take effect in possession or enjoyment after death. The petitioner nevertheless insisted upon the legality of the

[3] c. 209, 47 Stat. 169, 279; U. S. C. Tit. 26, § 411 (c).
[4] 15 F. Supp. 692.

exaction as the decedent died after the 1931 and 1932 amendments of § 302 (c), which declared the property transferred a part of the gross estate for computation of estate tax, in virtue of the reservation to the transferor of the income for his life. The court overruled the contention, holding that, if so retroactively enforced, the legislation violated the Fifth Amendment of the Constitution, and reversed the judgment.[5] In his application for certiorari the petitioner did not assign error to the Circuit Court's ruling as to the nontestamentary character of the transfer but confined his attack to the decision that the amendments of § 302 (c) could not constitutionally be invoked to sustain the tax.

In No. 484 it appears that the decedent died intestate June 4, 1933. The respondent, her son, is her administrator. November 15, 1920, she transferred to him certain cash and securities. On the same day they entered into an agreement reciting an understanding that, in case of his death during her life, the securities and cash should be reconveyed to her and, in the meantime, he should pay her such portions of the income therefrom as she might from time to time request in writing; that while he held the securities he might invest and reinvest; that he should bequeath her all the assets constituting the fund, in case she survived him; that she would reimburse him for any increased income taxes payable by him in virtue of his ownership of the fund and that, if she should survive him and take the property under his will, she would reimburse his estate for state and federal inheritance taxes due by reason of the bequest. The agreement contained other provisions for the safeguarding and separate custody of the fund during the mother's life. The respondent paid the decedent portions of the income upon her request. He executed a will bequeath-

5 90 F. (2d) 833.

ing the property to her on the terms mentioned in the agreement, but upon her death, he revoked the bequest. The Commissioner included the value of the fund in the decedent's gross estate, holding that she had made a transfer within the terms of § 302 (c) of the Revenue Act of 1926, as amended in 1931 and 1932. The Board of Tax Appeals reversed the Commissioner's determination and the Court of Appeals affirmed its action [6] upon the authority of the decision of the Circuit Court of Appeals of the First Circuit in No. 375 and that of the Seventh Circuit in *Helvering* v. *Bullard, ante,* p. 297.

Counsel for the Government argue that the Joint Resolution of 1931 and § 803 (a) of the Revenue Act of 1932 were intended to impose an estate tax measured by transfers of the sort therein described which had been irrevocably made prior to the passage of the legislation and that, so construed, they are not arbitrarily or unreasonably retroactive and do not offend the due process clause of the Fifth Amendment. Counsel for respondents answer that the enactments were intended to operate only upon transfers subsequently consummated and, if construed to reach the past transfers here involved, violate the amendment. We hold that the statutes are prospective in their operation and do not impose a tax in respect of past irrevocable transfers with reservation of a life interest.

Ascertainment of the intended application of the Joint Resolution of March 3, 1931, and § 803 (a) of the Revenue Act of 1932, involves a reading of them in the light of cases construing similar phraseology of earlier acts, their legislative history and administrative interpretation. There is agreement that § 803 (a) reënacted the substance of the Joint Resolution with but slight verbal differences. It will, therefore, be necessary to quote only

[6] 91 F. (2d) 1010.

the Resolution. By it § 302 (c) of the Revenue Act of 1926, *supra,* was amended to provide:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

.        .        .        .        .

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death* (1) *the possession or enjoyment of, or the income from, the property or* (2) *the right to designate the persons who shall possess or enjoy the property or the income therefrom;* except in case of a bona fide sale for an adequate and full consideration in money or money's worth."

The matter in ordinary type is § 302 (c) as it was prior to amendment; the additions are in italics.

The Government relies on the words "at any time" as demonstrating that the legislation was intended to apply to transfers made before its adoption and is so unequivocal as to leave no room for construction. This phrase, appearing in an earlier revenue act, had, however, been held not to render the statute effective upon transfers antedating the passage of the Act [7] and Congress apparently realized that the expression did not carry the statute back so as to embrace transactions consummated before its passage; for, in subsection (h) of § 302 of the Act of 1926,[8] in referring to transactions and interests

---

[7] *Shwab* v. *Doyle,* 258 U. S. 529; *Union Trust Co.* v. *Wardell,* 258 U. S. 537; construing § 202 of the Act of Sept. 8, 1916, 39 Stat. 777.

[8] 44 Stat. 71, U. S. C. Tit. 26, § 411 (h).

giving rise to a tax by virtue of preceding subsections, it directed that they should be taxable "whether made, created, arising, existing, exercised, or relinquished before or after the enactment *of this Act.*" [9]   We conclude that the meaning of the section is not so free from doubt as to preclude inquiry concerning the legislative purpose.

The history of the Resolution is of material aid in its construction.   Section 302 (c) of the Act of 1926, like earlier acts, measured the tax by the inclusion in the gross estate of property of which the decedent had made a voluntary transfer in contemplation of, or intended to take effect in possession or enjoyment at or after his death.   Notwithstanding the Treasury had ruled that a transfer of assets with a reservation of income for the donor's life came within the definition this court held otherwise.[10]   Dissatisfied with the decision, the Government sought a reversal of it but, in three judgments, announced on March 2, 1931, the ruling was reaffirmed.[11]   In the opinions in these cases, which led to the preparation and adoption of the Resolution, the court said there was "no question of the constitutional authority of the Congress to impose prospectively a tax with respect to transfers or trusts of the sort here involved . . ."   There then remained one day of the current session of Congress. The Treasury drafted an amendment of § 302 (c) to bring trusts of this type within its sweep, in the form of the Joint Resolution of March 3, 1931, which was sent to Congress on the day of our decisions and was passed,

[9] Compare *Shwab* v. *Doyle, supra,* at p. 536; *Lewellyn* v. *Frick,* 268 U. S. 238, 252.

[10] *May* v. *Heiner,* 281 U. S. 238, construing § 402 (c) of the Revenue Act of 1918, 40 Stat. 1057, 1097.

[11] *Burnet* v. *Northern Trust Co.,* 283 U. S. 782; *Morsman* v. *Burnet,* 283 U. S. 783; *McCormick* v. *Burnet,* 283 U. S. 784, construing § 402 (c) of the Revenue Act of 1921 and § 302 (c) of the Revenue Act of 1924.

under a suspension of the rules, on the next day, the last of the session.[12]

Because its passage was considered exigent the Resolution was adopted without having been printed and in reliance on statements made from the floor. The Congressional Record discloses the understanding of the Congress with respect to its scope. Mr. Garner, of the House Ways and Means Committee, stated: "The Committee on Ways and Means this afternoon had a meeting and unanimously reported the resolution just passed. We did not make it retroactive for the reason that we were afraid that the Senate would not agree to it." [13]

Mr. Hawley, of the same Committee, in charge of the Resolution, stated, in answer to a question: "It provides that hereafter no such method shall be used to evade the tax" and, referring to the situation created by the decisions of this court, he said:

"It is entirely apparent that if this situation is permitted to continue, the Federal estate tax will be seriously affected. Entirely apart from the refunds that may be expected to result, it is to be anticipated that many persons will proceed to execute trusts or other varieties of transfers under which they will be enabled to escape the estate tax upon their property. It is of the greatest importance therefore that this situation be corrected and that this obvious opportunity for tax avoidance be removed. It is for that purpose that the joint resolution is proposed."

This language, we think, scarcely bears the interpretation put upon it by Government counsel,—that the tax was meant to be laid on estates of all who died after the adoption of the Resolution.

Bearing in mind that the Resolution was prepared and its passage recommended by the Treasury, the adminis-

[12] Cong. Rec., 71st Cong., 3rd Sess., Vol. 74, Part 7, p. 7198.
[13] Cong. Rec., 71st Cong., 3rd Sess., Vol. 74, Part 7, pp. 7198–7199.

trative interpretation supports in uncommon measure the view that it was not intended to operate upon transfers completed prior to its passage. Promptly upon its passage the Department issued T. D. 4314,[14] approved by the Secretary of the Treasury May 22, 1931, which was in the form of a letter to collectors of internal revenue and others concerned. It quoted the language of the resolution and stated:

"In view of the decisions of the Supreme Court of the United States in Nichols *v.* Coolidge, (274 U. S., 531 [T. D. 4072, C. B. VI–2, 351]), May *v.* Heiner, (281 U. S., 238 [Ct. D. 186, C. B. IX–1, 382]), Coolidge *v.* Long, (282 U. S., 582), Burnet *v.* Northern Trust Co. (51 S. Ct., 342), Edgar M. Morsman, jr., *v.* Burnet, (51 S. Ct., 343) and Cyrus H. McCormick *v.* Burnet (51 S. Ct., 343), the portion added by the amendment to section 302 (c) of the Revenue Act of 1926, as set forth above in italic, will, notwithstanding the provisions of section 302 (h) of that Act, be applied *prospectively* only; i. e., to such transfers coming within the amendment as were made *after* 10.30 p. m., Washington, D. C., time, March 3, 1931.

"Regulations 70, 1929 edition, will be amended to make the changes necessitated by the amendment to section 302 (c) of the Revenue Act of 1926 and the above decisions of the Supreme Court." (Italics in the original.)

April 11, 1932, Regulations 70 were amended by T. D. 4336 and, in part, read:

"Art. 18. *Retention of possession, enjoyment, or income.*—Any transfer which was made by the decedent after 10.30 p. m., Washington, D. C., time, March 3, 1931, and under which he retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the

[14] C. B. X–1, 450.

right to designate the persons who shall possess or enjoy the property or the income therefrom, is taxable, provided such transfer was not a bona fide sale for an adequate and full consideration in money or money's worth."

Not only is the legislative history of § 803 (a) of the Act of 1932 bare of indication of any purpose that it should affect past transfers, but what appears tends to disprove any such thought.[15] Moreover, the reënactment of the Resolution of 1931 in the light of the administrative rulings requires the conclusion that Congress approved and adopted the administrative construction of the provision it reënacted.[16]

Regulations 80, approved November 7, 1934, after paraphrasing § 803 (a), concluded: "The provisions of this subdivision do not apply (1) if the transfer was made prior to 10.30 p. m., eastern standard time, March 3, 1931, and (2) if the decedent died prior to 5 p. m. eastern standard time, June 6, 1932 [The date of passage of the Revenue Act of 1932]. See section 506 of the Revenue Act of 1934." This regulation was retained as Article 18 in the 1937 edition of Regulations 80 issued October 26,

---

[15] The reports of the Committees of both House and Senate contain this statement: "The purpose of this amendment to section 302 (c) of the revenue act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable and not made in contemplation of death. Certain new matter has also been added, which is without retroactive effect" (House Committee Report No. 708, 72nd Cong., 1st Sess.; Senate Committee Report No. 665, same session).

[16] *Brewster* v. *Gage*, 280 U. S. 327, 337; *United States* v. *Dakota-Montana Oil Co.*, 288 U. S. 459, 466; *McFeely* v. *Commissioner*, 296 U. S. 102, 108; *United States* v. *Safety Car Heating & L. Co.*, 297 U. S. 88, 95.

1937. Thus while the regulations have been altered to treat § 803 (a) of the 1932 Act as retroactively affecting transfers made after March 3, 1931, the Department has consistently ruled that the Resolution of 1931 has no application to transfers made prior to its adoption. The position thus recently taken is inconsistent in its treatment of the two like enactments and is difficult to understand in view of the consistent interpretation of the Joint Resolution but it fails to weaken the force of that consistent interpretation with knowledge of which Congress reënacted the same provision in 1932.

The Government urges that all of these circumstances which are persuasive that the enactments were intended to operate for the future are overborne by § 302 (h) of the Revenue Act of 1926, which is:

"Except as otherwise specifically provided therein subdivisions (b), (c), (d), (e), (f), and (g) of this section shall apply to the transfers, trusts, estates, interests, rights, powers, and relinquishment of powers, *as severally enumerated and described therein,* whether made, created, arising, existing, exercised, or relinquished before or after the enactment of *this* Act." (Italics supplied.)

It will be remembered that the Joint Resolution of 1931 amended § 302 (c) of the Act of 1926 to cover transfers such as are here involved. It made no reference to any other portion of that Act. Since § 302 (c) in its original form was, by § 302 (h), made applicable to transfers whether made before or after the Act of 1926, the contention is that it has like operation and effect as respects the provision added to it by the amendment. And the same argument is advanced with respect to the amendment of subsection (c) by the Act of 1932.

Resort is had to canons of constructions as an aid in ascertaining the intent of the legislature. It may occur that the intent is so clear that no such resort should be indulged, and the Government claims this is such a case.

The matter is, we think, involved in sufficient ambiguity to warrant our seeking such aid. A well-settled canon tends to support the position of respondents: "Where one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute . . . Such adoption takes the statute as it exists at the time of adoption and does not include subsequent additions or modifications of the statute so taken unless it does so by express intent."[17] The weight of authority holds this rule respecting two separate acts applicable where, as here, one section of a statute refers to another section which alone is amended.[18]

In view of other settled rules of statutory construction, which teach that a law is presumed, in the absence of clear expression to the contrary, to operate prospectively;[19] that, if doubt exists as to the construction of a taxing statute, the doubt should be resolved in favor of the taxpayer,[20] we feel bound to hold that the Joint Resolution of 1931 and § 803 (a) of the Act of 1932 apply only to transfers with reservation of life income made subsequent to the dates of their adoption respectively.

---

[17] Lewis' Sutherland on Statutory Construction, 2d ed., Vol. II, pp. 787–8.

[18] *Calumet Foundry & M. Co.* v. *Mroz,* 79 Ind. App. 305; 137 N. E. 627; *State* v. *Beckner,* 197 Iowa 1252; 198 N. W. 643; *Crohn* v. *Telephone Co.,* 131 Mo. App. 313; 109 S. W. 1068; *Gustafson* v. *Hammond Irrigation Dist.,* 87 Mont. 217; 287 Pac. 640; *Flanders* v. *Town of Merrimack,* 48 Wis. 567; 4 N. W. 741; contra, *American Bank* v. *Goss,* 236 N. Y. 488, 142 N. E. 156.

[19] *United States* v. *Heth,* 3 Cranch 399, 413; *Reynolds* v. *M'Arthur,* 2 Pet. 417, 434; *Shwab* v. *Doyle,* 258 U. S. 529; *United States* v. *Magnolia Petroleum Co.,* 276 U. S. 160, 162.

[20] *Gould* v. *Gould,* 245 U. S. 151; *Shwab* v. *Doyle, supra; Reinecke* v. *Northern Trust Co.,* 278 U. S. 339, 348; *White* v. *Aronson,* 302 U. S. 16.

Holding this view, we need not consider the contention that the statutes as applied to the transfers under consideration deprive the respondents of their property without due process in violation of the Fifth Amendment.

The judgments are

*Affirmed.*

MR. JUSTICE CARDOZO and MR. JUSTICE REED took no part in the consideration or decision of these cases.