ESTATE OF MARY H. HUGHES, EDNYFED H. WILLIAMS, ADMINISTRATOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93139. Promulgated August 8, 1941.

*Francis D. Butler, Esq.,* for the petitioner.
*Franklin F. Korell, Esq.,* for the respondent.

1200

OPINION.

STERNHAGEN: The decedent died in 1935, and the question is whether her estate was subject to the Revenue Act of 1932, section 803 (a), which was a modification of section 302 (c) of the Revenue Act of 1926. In 1928, at a cost of $945,000, she had made a contract with the insurance company by which she received the company's promise to pay her $2,625 a month for her life and, after her death, to dispose of $900,000 in a prescribed manner among her children, grandchildren, and great-grandchildren. None of the descendants had possession or enjoyment of any part of the fund or its income during the decedent's lifetime, although they did have a vested right in a future expectancy. The practical effect upon them of her contract necessarily came after her death. If, instead of making her contract with the insurance company, she had in 1928 given $945,000 to the children, or someone representing them, and had taken their promise not to use it during her lifetime except to pay her $31,500 a year until she died, this would certainly have been a gift to take effect in possession or enjoyment at or after her death, even though ownership of the fund vested in the children at once, *Helvering* v. *Tyler,* 111 Fed. (2d) 422; affd., 312 U. S. 657.

But this plain understanding has become involved in refinements so

that the language has lost its simple meaning. It is said that because the contract was made in 1928 the children acquired their rights then, that the rights were irrevocably vested during the decedent's life, that her death added nothing to those rights, and, since this was the extant legal conception when the decedent made her transfer, it is the only conception which may be recognized in taxing her estate. The answer is that, although she created rights, the possession or enjoyment of the property did not take effect before she died. There is no need to give serious consideration to the negligible right which she retained to receive back the fund on the infinitesimal chance that she would survive her descendants. Such a remote possibility may properly be disregarded.

*May* v. *Heiner*, 281 U. S. 238, supports the petitioner's contention that the rights which were transferred by the creation of the 1928 contract were vested at that time, and that nothing may be regarded as taking effect in possession or enjoyment at or after the decedent's death. That decision was immediately devitalized as to the future by Congressional enactment. The resolution of March 3, 1931, provided that a transfer whereby the transferor retained the income from the property for the rest of his life was to be regarded as a taxable transfer, notwithstanding that it effected a vesting of title during his lifetime. But the resolution, which was embodied in the statute by section 803 (a) of the Revenue Act of 1932, was confined to later transfers, the Supreme Court holding that it was not intended to have retroactive application to transfers made during life prior to its enactment, even though the transferor died afterwards, *Hassett* v. *Welch*, 303 U. S. 303.

More recently, however, the application of the estate tax has been held by the Supreme Court to be affected not so much by the common law refinements of conveyancing as by the practical effect of the transfer. In *Helvering* v. *Hallock*, 309 U. S. 106, the Court, having in mind "the controlling purposes of the estate tax law", reiterated the broad principle announced in *Klein* v. *United States*, 283 U. S. 231, in the following language:

Nothing is to be gained by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed.

From the *Hallock* case it must be inferred that the divesting of legal title in 1928 when the contract was made is not the determinant of the time when the transfer became effective in possession or enjoyment. Specifically, the *Hallock* decision overruled only *Helvering* v. *St. Louis Union Trust Co.*, 296 U. S. 39, and *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48, but the reasoning leads to the belief that *May* v. *Heiner*,

*supra*, may no longer be followed. *May* v. *Heiner* treated the vesting of title in another during life while retaining the income thereof until death as sufficient to prevent the inclusion of the property in the gross estate, an interpretation whereby the actual possession or enjoyment of the property is subordinate to the bare legal title. It is hard to see how this interpretation can survive the *Hallock* case. Cf. *Van Vranken* v. *Helvering*, 115 Fed. (2d) 709. The effect of *Hassett* v. *Welch*, *supra*, was no more than to reaffirm the doctrine of *May* v. *Heiner*, *supra*, in respect of any *inter vivos* transfer of title which occurred before the adoption of the resolution of March 3, 1931; and without *May* v. *Heiner*, *supra*, it has no remaining force.

The inclusion of the value of the present contract in the decedent's gross estate is supported by *Helvering* v. *Le Gierse*, 312 U. S. 531. The Supreme Court, holding that an alleged insurance policy was, in truth, an annuity contract not affected by the $40,000 insurance exemption of section 302 (g), held further that the sums payable to beneficiaries were taxable under section 302 (c)—the section which is in controversy here—as transfers to take effect in possession or enjoyment at or after death.

In view of the reasoning upon which we think this decision must rest, we have refrained from discussion of the elaborate arguments of counsel. If our view of the construction of the language of the statute in the light of the recent opinions of the courts is disapproved, it would seem to follow that the Commissioner's determination must be reversed; for the earlier decisions clearly pointed to the exclusion from the gross estate of property of which the decedent had before March 3, 1931, made a complete *inter vivos* transfer, reserving to himself only the income during his life.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

LEECH, dissenting: In *May* v. *Heiner*, 281 U. S. 238, the Supreme Court held that retention by the grantor of the income for life of an irrevocable trust does not justify the inclusion of the corpus of the trust in the estate of the grantor for estate tax purposes. In *Hassett* v. *Welch*, 303 U. S. 303, the same Court held that the Joint Resolution of Congress adopted March 3, 1931, which negatived that holding, could not be retroactively applied. Those cases have been leading authorities for many years in a matter of general importance.

The facts in the present case are admittedly identical with those in *May* v. *Heiner*, *supra*, as supplemented by *Hassett* v. *Welch*, *supra*. Upon the authority of *Helvering* v. *Hallock*, 309 U. S. 106, the majority holds that those cases are no longer law. This is the first pronouncement to that effect. Since the decision in the *Hallock* case, the courts

and the Board, in at least four cases, have held just the opposite. *Commissioner* v. *Flanders*, 111 Fed. (2d) 117 (C. C. A., 2d Cir.); *Commissioner* v. *Kellogg*, 119 Fed. (2d) 54 (C. C. A., 3d Cir.); *Chase National Bank* v. *Higgins*, 38 Fed. Supp. 858 (U. S. Dist. Ct., S. Dist. N. Y.); and *Estate of William G. Thompson*, 41 B. T. A. 901.

The attitude of the Circuit Court of Appeals for the Third Circuit is interesting on the point. In the *Kellogg* case, *supra*, an estate tax was proposed under section 302 (c) of the Revenue Act of 1926, as amended by section 803 of the Revenue Act of 1932. The question was whether or not the value of the corpus of a trust irrevocably created on March 2, 1926, to which all its property had been transferred before October 1, 1929, was includable in the gross estate of the deceased-grantor for estate tax purposes. The grantor had retained the income of the trust for life and, upon the remote contingency that all the remainder beneficiaries predeceased the survivor of the grantor and his wife, the corpus was then to go to the surviving next of kin of the grantor.

The majority opinion here, as does the court in the *Kellogg* case, disregards the "remote possibility" of the grantor receiving back the corpus. However, it proceeds to tax the value of the corpus of the present trust to the grantor under the literal wording of section 302 (c) of the Revenue Act of 1926, as amended by section 803 (a) of the Revenue Act of 1932, which is the identical section considered in both the foregoing cases.

This position, it seems to me, was exactly the argument made by the petitioner in the *Kellogg* case under his second point there. The Third Circuit, in holding against the Government in that case, unanimously said:

The petitioner further contends that even if he is in error in urging that the corpus of the trust is includible in the grantor's estate under the principles of *Helvering* v. *Hallock*, none the less the transfer was a substitute for the testamentary disposition of the grantor and, in the words of the statute, was "intended to take effect in possession or enjoyment at or after his death." In short the petitioner relies on the exact language of the statute. His difficulty in sustaining this contention arises also with *May* v. *Heiner* and becomes insurmountable, so far as this court is concerned, when we contemplate the decision in *Reinecke* v. *Northern Trust Co.*, 278 U. S. 339, 347–348. *If the words of the statute just quoted are to receive the meaning contended for by the petitioner, they must receive it from the Supreme Court.* [Emphasis supplied.]

In the face of these authorities, it would seem that the Board of Tax Appeals should certainly be no less hesitant than the Third Circuit Court of Appeals. See also *Hammond-Knowlton* v. *United States*, 121 Fed. (2d) 192 (C. C. A., 2d Cir). I think the Board should follow *May* v. *Heiner*, *supra*, and *Hassett* v. *Welch*, *supra*.

ARUNDELL, SMITH, and BLACK agree with this dissent.