ESTATE OF HARRY A. WORCESTER, DECEASED, THE CENTRAL TRUST COMPANY, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 108989.  Promulgated October 15, 1942.

*Albert L. Russel, Esq.*, and *John H. Clippinger, Esq.*, for the petitioner.

*Melvin S. Huffaker, Esq.*, and *Robert S. Dechant, Esq.*, for the respondent.

OPINION.

Van Fossan: Respondent included the remainder value of securities contributed by the decedent to the corpus of the trust, hereinafter referred to as the corpus of the trust, as a part of the decedent's gross estate under section 302 (c) of the Revenue Act of 1926, as amended. Respondent asserts that this amount was so includible because it was a transfer both in contemplation of death and intended to take effect in possession or enjoyment at or after death. Thus two questions are presented: First, was the transfer made in contemplation of death? and, second, did the decedent intend the transfer to take effect in possession or enjoyment at or after his death?

The first question is one of fact, the answer to which is to be gathered by "carefully scrutinizing the circumstances * * * to detect the dominant motive of the donor in the light of his bodily and mental condition." *United States* v. *Wells*, 283 U. S. 102. The test is one of motive. If the thought of death was the impelling cause of the transfer in question, it was in contemplation of death and, therefore, includible in decedent's gross estate. The burden of proving that death was not the motive causing the transfer is on petitioner.

After carefully weighing the facts and circumstances, together with the inferences to be drawn therefrom, we have concluded in our findings of fact that the transfer in question was not made in contemplation of death. It was made at a time when the decedent was extremely active in his business affairs as a vice president of the New York Central System and president of the Cincinnati Union Terminal Co., which was at that time constructing a $41,000,000 railroad terminal in Cincinnati. The testimony indicated that he was in good health, traveling extensively on business and pleasure trips and on occasions going with his wife to this hunting lodge in Canada beyond the reach of automobiles, where he fished and "roughed it." He was also active in social life in Cincinnati, going out evenings as often as three or four nights a week. After retirement from business he often went on long motor

trips, driving the car himself. We picture the decedent at the time of the creation of the trust as a vigorous man who, although 66 years of age, still retained a zest for living so great as to push thoughts of death into the background.

It is our opinion that motives associated with life, not with death, caused decedent to make the transfer. By creating the trust he avoided heavy personal property taxes imposed by the State of Ohio and, in addition, reduced his Federal income taxes by dividing his income between himself and his wife, thereby reducing his surtaxes. The saving of property and income taxes as a motive for making a transfer is a factor to be considered in determining whether the presumption that a transfer was made in contemplation of death has been overcome. *Robert A. Taft, Executor,* 33 B. T. A. 671; affd., 92 Fed. (2d) 667; affd., 304 U. S. 356; *Sadie S. Stein et al., Executors,* 9 B. T. A. 486. We have also found that on retirement the decedent would no longer have had available the secretary who handled his personal matters while with the New York Central Railroad. Thus, by creating the trust he anticipated avoiding the details involved in taking care of his investments after retirement, a purpose associated with thoughts of further life.

We conclude that the transfer was not made in contemplation of death.

The second question is whether the trust constituted a transfer intended to take effect in possession or enjoyment at or after death. Petitioner in effect contends that it was not the death of the decedent, but the death of others, which determined who would ultimately take the property and that the decedent retained no string to the corpus of the trust which was released by his death. Respondent, relying principally on *Helvering* v. *Hallock,* 309 U. S. 106, argues that, since the decedent retained the right to the income from the trust during his life in the event he survived his wife, the decedent did not intend the transfer to take effect in possession or enjoyment until his death. Respondent further maintains that the decedent did not make a completed gift at the time of the creation of the trust.

The ultimate question before us is the same as that before the Supreme Court in *Helvering* v. *Hallock, supra.* There the question was stated as follows:

\* \* \* Whether the transfer made by the decedent in his lifetime is "intended to take effect in possession or enjoyment at or after his death" *by reason of that which he retained,* is the crux of the problem. [Emphasis supplied.]

The trust in question was irrevocable. It provided that the income was to be paid to the decedent's wife for her life and on her death to the decedent for his life. On the death of the survivor of them the corpus was to be distributed in equal shares to the decedent's brother

and sister or their issue per stirpes. If the brother and sister predeceased without issue the decedent and his wife, the corpus was to be distributed to the decedent's next of kin in accordance with the intestate laws of the State of New York. Thus, the decedent retained a life estate in the trust which depended on his outliving his wife.

This proceeding is almost precisely like *May* v. *Heiner*, 281 U. S. 238. There, as here, the grantor of an irrevocable trust retained a life estate, contingent upon the grantee of another life estate predeceasing her. The Supreme Court considered as unimportant the question whether or not the grantor had predeceased her husband and held that the corpus of the trust was not includible in the grantor's estate as a transfer intended to take effect in possession or enjoyment at or after death.

After the decision of *May* v. *Heiner*, Congress enacted a resolution, the effect of which was to include in the gross estate of a decedent an *inter vivos* transfer of the type involved in that decision. Subsequent to the enactment of this resolution the Supreme Court, in *Hassett* v. *Welch*, 303 U. S. 303, held that the resolution did not apply to transfers made prior to the enactment of the resolution, even though the transferor did not die until after such enactment. Since the transfer in question was made prior to the enactment of the resolution, our decision would be controlled by *May* v. *Heiner* if that case and *Hassett* v. *Welch* were still to be considered the view of the Supreme Court.

More recently, however, the Supreme Court reiterated in *Helvering* v. *Hallock*, *supra*, the following language from *Klein* v. *United States*, 283 U. S. 231:

Nothing is to be gained by multiplying words in respect of the various niceties of the art of conveyancing or the law of contingent and vested remainders. It is perfectly plain that the death of the grantor was the indispensable and intended event which brought the larger estate into being for the grantee and effected its transmission from the dead to the living, thus satisfying the terms of the taxing act and justifying the tax imposed.

The Board, in *Estate of Mary H. Hughes*, 44 B. T. A. 1196, faced with the problem of determining the applicability of *Helvering* v. *Hallock*, stated that the consequence of the *Hallock* case was that *May* v. *Heiner* may no longer be followed and that *Hassett* v. *Welch*, being deprived of the support of *May* v. *Heiner*, has no remaining force. We believe this position was adequately fortified and we adhere to the conclusion so announced. Since the case at bar presents a *May* v. *Heiner* situation, it follows that the reasoning of *Helvering* v. *Hallock* controls.

Under the provisions of section 302 (c), as amended, a transfer intended to take effect in possession or enjoyment at or after death is includible in the transferor's gross estate. The purpose of this language was to prevent the avoidance of estate taxes by *inter vivos* gifts

which were testamentary in character. In this proceeding the decedent gave a life estate to his wife. So far as that life estate is concerned, the gift was a present gift, not testamentary in character and, therefore, was not includible in the decedent's gross estate. The Commissioner has recognized this to be true, since he has excluded the value of the wife's life estate from the gross estate here involved. The enjoyment of the remainder interests in the corpus, however, was dependent upon the death of the decedent. To that extent it was testamentary in character and was a transfer intended to take effect in possession or enjoyment at or after death. Respondent is sustained.

*Decision will be entered under Rule 50.*