**BREWER et al. v. HASSETT, Collector of Internal Revenue.**

Civ. A. No. 1115.

District Court, D. Massachusetts.

March 23, 1943.

Charles M. Rogerson, of Boston, Mass., for plaintiffs.

Edmund J. Brandon, U. S. Atty. and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe, and James P. Garland, Sp. Assts. to Atty. Gen., for defendant.

FORD, District Judge.

The proceeding here is a motion for summary judgment filed by the defendant in an action to recover federal estate taxes in the sum of $46,119.73, with interest, alleged to have been illegally collected as estate taxes from the plaintiffs as executors of the estate of Joseph Brewer, deceased. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; 26 U.S.C.A. Int.Rev.Code § 3772.

On June 12, 1930, Joseph Brewer, then 82 years of age, transferred to John D.

Brewer, his son, securities of the value of $260,653.50, to hold in trust. The trust indenture provided that the income from said securities was to be paid over to the grantor, Joseph Brewer, for his life, and upon his death said income was to be paid over to the grantor's wife. Upon the death of the survivor, the trust property was to be divided into four equal parts. One of said equal parts was to be paid over to John D. Brewer free from all trusts; the other three parts were to be retained in trust and the income therefrom was to be paid over to Rachel B. Huntington, Madeleine T. B. Whitney, and Edward S. Brewer, all children of the grantor, and upon their death the parts were to be distributed to their children. The ninth paragraph of the trust indenture provided that: "If my said son should not live to fully complete and carry out the above trusts a successor may be appointed by the Judge of Probate for said County of Norfolk upon the petition of those then entitled to the income, or the trusts so far as they then exist may be cancelled and discharged and the securities belonging to the several parts may be paid over and transferred to the persons then entitled to the income therefrom, if they shall all agree to such a disposition of the matter."

Joseph Brewer died September 6, 1938 and the value of the trust property was included in his gross estate. On October 30, 1940, a claim for refund in the amount of $46,119.73 was filed by the plaintiffs which was rejected by the Commissioner of Internal Revenue on January 9, 1941. The Commissioner contended that paragraph 9 of the trust indenture gave the grantor power to cancel the trust and have the corpus returned to him if he survived his son, the trustee; and that therefore the trust property is includible in the gross estate of the grantor as a transfer to take effect in possession or enjoyment at or after the death of the transferor within the meaning of Section 302(c) of the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Code § 811(c).[1] The Commissioner cited Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, in support of the rejection.

Defendant in support of its motion relies upon the reasoning submitted by the Commissioner in rejecting plaintiff's claim for refund. Plaintiffs contest the motion on the ground that the grantor, Joseph Brewer, had no power under paragraph 9 of the trust indenture to cancel the trust and that there was no possibility of reverter in the grantor which would enable the trust property to be included in his gross estate under the principle of Helvering v. Hallock, supra. The plaintiffs contend that to view the clause otherwise would be a distortion of the meaning of the clause and without the plain intent of the grantor.

■ ■ It is clear that if paragraph 9 of the trust indenture is construed as giving the grantor power to cancel the trust and have the corpus returned to him, the trust property was properly included in his gross estate for the purpose of the federal estate tax under Section 302(c) of the Internal Revenue Act of 1926. Helvering v. Hallock, supra.[2] And if paragraph 9 is construed so as to deny the grantor any power to cancel the trust and revest the

---

[1] "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

* * * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, * * *".

Section 302(c) of the Revenue Act of 1926 was amended by the Joint Resolution of March 3, 1931, c. 454, 46 Stat. 1516, and further amended by Section 803(a) of the Revenue Act of 1932, c. 209, 47 Stat. 279. These amendments are not applicable to the present case since the transfer was effected prior to March 3, 1931. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

[2] In that case decedent in his lifetime transferred property in trust providing that the income therefrom be paid to his wife for her life and upon her death the corpus to be distributed, but if he survived the wife the property was to revert to himself. The court held that the value of the remainder interest should be included in decedent's gross estate under Section 302(c) of the Revenue Act of 1926, as a transfer intended to take effect in possession or enjoyment at or after the grantor's death. (Two other cases which involved similar trust provisions were considered by the court along with the Hallock case.) The theory of the court in the Hallock case, which affirmed its decision in Klein v. United States,

corpus in himself, then the property was erroneously included in his gross estate under Section 302(c) of the Revenue Act of 1926. The mere reservation of a life estate in the grantor is not enough to enable the Commissioner to include the property in the grantor's gross estate if the transfer was made prior to March 3, 1931. May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244; Hassett v. Welch, supra.[3]

Therefore, the only issue before me now is one of construction. The question raised is: Does paragraph 9 of the trust indenture create in the grantor a possibility of reverter? That is, does this paragraph give the grantor power to cancel the trust and have the corpus returned to him if his son, the trustee, predeceases him?

 In determining what rights are created by an instrument transferring property in trust, the intent of the grantor is controlling. Gorey v. Guarente, 303 Mass. 569, 573, 22 N.E.2d 99; Dumaine v. Dumaine, 301 Mass. 214, 218, 16 N.E.2d 625, 118 A.L.R. 834. This intent is determined by an examination of the language of the entire instrument aided by the surrounding circumstances. Gorey v. Guarente, supra, 303 Mass. 574, 22 N.E.2d 99; Dumaine v. Dumaine, supra; Clark v. Hearne, 263 Mass. 114, 116, 160 N.E. 309; Ware v. Minot, 202 Mass. 512, 516, 88 N.E. 1091. It is true that where there is no ambiguity in an instrument so that no doubt is raised as to the meaning of the provisions contained therein, extrinsic evidence of intent is not admissible. Chamberlain v. Van Horn, 246 Mass. 462, 141 N. E. 111; Best v. Berry, 189 Mass. 510, 75 N.E. 743, 109 Am.St.Rep. 651; Restatement, Trusts, Section 24 b, Section 38, Comment a. But I believe that there is sufficient ambiguity in the trust indenture in the present case to permit a discussion of surrounding circumstances.

Joseph Brewer, the grantor, was 82 years of age when he made the transfer in trust, his wife being 78 at the time. It is obvious that he desired to dispose of the property in such a manner so as to insure to his wife and himself the income therefrom until they died. Then, as paragraph 3 of the trust indenture provides, the trustee was to divide the property "into four equal parts". The beneficiaries of these four parts were all children of the grantor, one of them being trustee as well. The trustee's part was to go to him outright, the remaining three parts to be retained in trust, the income to be paid to the beneficiaries thereof for their lives and upon their death the trust property to be paid over to their children.

There is no express power of revocation or cancellation given to the grantor in paragraphs 1–8 of the indenture. If there be such a power in the instrument at all it must be contained in paragraph 9. The ninth paragraph provides that if the trustee does not live to "fully complete and carry out the above trusts" a successor can be appointed upon the "petition of those then entitled to the income". Then an alterna-

---

283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996, and overruled its decisions in Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35, seems to be that the grantor of a trust who has a possibility of reverter in the corpus does not relinquish his hold upon the property until his death and therefore the property is properly includible in his gross estate on his death as a transfer intended to take effect at or after his death under Section 302(c) of the Revenue Act of 1926.

[3] The Board of Appeals, in a series of cases starting with Estate of Mary H. Hughes v. Commissioner of Internal Revenue, 44 B.T.A. 1196, held that Hassett v. Welch, supra, and May v. Heiner, supra, are no longer to be followed, being overruled by the Hallock case. Estate of Harry A. Worcester v. Com'r, 47 B.T.A.

909; Estate of Frederick S. Fish v. Com'r, 45 B.T.A. 120; cf. Mabel Shaw Birkbeck Estate v. Com'r, 47 B.T.A. 803. However, a careful search of the cases failed to reveal any recognition of these decisions by the United States courts. Higgins v. Commissioner of Internal Revenue, 1 Cir., 129 F.2d 237, 241; Helvering v. Safe Deposit & Trust Co., 4 Cir., 121 F.2d 307; Commissioner of Internal Revenue v. Kellogg, 3 Cir., 119 F. 2d 54; Blakeslee v. Smith, 2 Cir., 110 F. 2d 364. And on February 2, 1943, in Estate of Edward E. Bradley, 1 T.C. No. 69, Docket No. 109069, the Board of Tax Appeals reversed its position in the Hughes case, stating that Hassett v. Welch, supra, and May v. Heiner, supra, are still controlling. Thus, the confusion which the Board of Tax Appeals created by its decision in Estate of Mary H. Hughes, supra, is now dissipated.

tive is stated: "or the trusts so far as they then exist may be cancelled" and the property belonging to the "several parts" may be transferred to the "persons then entitled to the income therefrom", if they all agree to such a disposition.

Did the grantor intend to give himself the power to cancel and discharge the trust if his son, the trustee, predeceased him? I think not. For one thing, the grantor, 82 years old, never thought of outliving the trustee who was only 45; such a contingency in all probability never entered his mind. Nor did the grantor ever think that his wife, 78 years old, would outlive the trustee. Would anyone suppose that the grantor would give his wife at this or a later age the power to cancel the trust and have the corpus of the trust returned to her if the trustee died in her life? This is what the government contends. It is reasonable to infer the grantor had in mind his three children, who were to be paid the income from the parts held by the trustee, when he provided that a successor could be appointed upon the petition of "those then entitled" and when he provided that "the trusts so far as they then exist" could be cancelled. There was not during his lifetime a plurality of persons entitled to share the income. Upon cancellation the grantor provided that the property belonging to the "several parts" were to go to the "persons then entitled to the income". It is to be noted that the plural is consistently used in paragraph 9—"the trusts"; "the several parts"; "the persons". This indicates that he by no means was referring to the time when he or his wife was receiving the income. After all one cannot distort plain meanings. Plain intention cannot be denied by a vague possibility of construction that would deny it.

The grantor knew how to provide for a power of revocation in himself to effect a reverter. Prior to the transfer effected in the present case, the grantor executed a certain deed of trust on March 5, 1930, Article VII of which is as follows: "The Donor shall have the right at any time and from time to time during the continuance of the trust created hereunder to withdraw all or any part of the trust property, free of all trusts, or to revoke and terminate the trusts hereby created. The Donor may also alter and amend this indenture by filing with the Trustee a written statement thereof signed by the Donor and bearing the written consent of the Trustee."

This particular trust was subsequently terminated by the grantor; and on July 5, 1932, the property was again conveyed in trust, the instrument containing a paragraph identical with that above quoted. The property subject to the trust of July 5, 1932 was included by plaintiffs in the gross estate of the grantor for purposes of the federal estate tax. So it is seen that both before and after the creation of the trust involved in the present case, the grantor executed instruments of trust in which he reserved to himself the power of termination in a clear and forthright manner. It is not a fair and logical inference that had he desired to keep a string on the property included in the trust of June 12, 1930, he would have done it in the vague manner suggested by the government.

█ The trust property in the present case was to remain secure for the benefit of the grantor's children and the latter's children. Neither the grantor nor his wife had the power to step in and cancel the trust. It was irrevocable. That right was reserved to the children if the trustee died while they were receiving the trust income. This conclusion is reached after noting the respective ages of the grantor, his wife and the trustee; after an analysis of the language used in paragraph 9; and after examining the trust deeds executed by the grantor before and after the creation of the trust of June 12, 1930, wherein the grantor expressly reserved to himself such a power.

It is the court's conclusion that the trust transfer of June 12, 1930 was not intended to take effect in possession or enjoyment at or after the grantor's death within the meaning of Section 302 (c) of the Revenue Act of 1926 and, consequently, the defendant's motion for summary judgment is denied.