**THEOPOLD v. UNITED STATES.**

No. 4861.

District Court, D. Massachusetts.

Jan. 14, 1947.

R. Gaynor Wellings and Tyler & Reynolds, all of Boston, Mass., for plaintiff.

George F. Garrity, U. S. Atty., of Boston, Mass., Sewall Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe, and James P. Garland, Sp. Assts. to the Atty. Gen., for the United States.

HEALEY, District Judge.

This is an action by the executor of the estate of Henry F. Sears for the recovery of $174,392.01, and interest paid of $7,635.02, representing a portion of the Federal Estate Taxes paid upon the estate of Henry F. Sears.

The case was submitted on the pleadings, stipulation of facts, arguments and briefs of counsel.

The stipulation of facts filed by the parties, which is adopted as part of my findings of facts is as follows:

"1. Henry F. Sears, the plaintiff's testator, died on January 1, 1942, a resident of Boston, Massachusetts, and was survived by three children, Emily Esther Sears, who was born July 15, 1905, Jean Struthers Sears, who was born November 25, 1907, and Henry Sears, who was born December 10, 1913. All said children are still living.

"2. Arthur N. Maddison of Lexington, Massachusetts, was duly appointed executor of the will of said Henry F. Sears by the Probate Court in and for the County of Suffolk in said Massachusetts on January 29, 1942 and was the duly qualified and acting executor of said will from that date until he duly resigned as such executor on September 16, 1944.

"3. The plaintiff, a resident of Dedham, in the County of Norfolk, Massachusetts, is now and at all times since November 2, 1944 has been the duly qualified and acting executor of the will of said Henry F. Sears, having been duly appointed such executor by the aforesaid Probate Court on said November 2, 1944 to act in place of said Arthur N. Maddison.

"4. On December 29, 1915 said Henry F. Sears created a trust under an indenture bearing that date of which The New England Trust Company, a Massachusetts corporation having an usual place of business in said Boston, is the surviving trustee— Arthur Adams, the other trustee named therein, having deceased. Thereafter said Henry F. Sears executed certain amendments to said trust indenture by instruments dated, respectively, December 18, 1919, June 24, 1926, December 23, 1929, March 17, 1932, and October 25, 1940. True copies of said indenture and amendments are annexed to the Complaint in the above-entitled action and incorporated herein by reference.

"5. The Federal estate tax with respect to the estate of said Henry F. Sears became due and payable on April 1, 1943. On April 5, 1943 said Arthur N. Maddison, the plaintiff's predecessor as executor of the will of said Henry F. Sears, filed the Estate Tax Return for the estate of said Henry F. Sears. Said return as originally made up was in typewritten form and the total estate tax payable as shown therein was $477,287.66. However, at the time of filing said return said figure of $477,287.66 was stricken out by said Arthur N. Maddison or his duly authorized agent and $474,029.82 inserted in place thereof in pen and ink. Nevertheless, the above mentioned sum of $477,287.66 was paid by said Arthur N. Maddison at the time said return was filed as aforesaid. Said return was filed with and said sum of $477,287.66 was paid to Thomas B. Hassett, who was then but was not at the time the Complaint in the above-entitled action was filed, the duly qualified and acting Collector of Internal Revenue for the District of Massachusetts at said Boston. Said sum was allocated by said Thomas B. Has-

sett as follows: $474,029.82 to Federal estate tax due, $311.69 to interest due for late payment, and $2,946.15 to a suspense account.

"6. Thereafter and prior to December 24, 1943, the Commissioner of Internal Revenue determined that there was a deficiency in Federal estate taxes on said estate due from said predecessor executor in the amount of $194,254.37 with interest thereon in the amount of $8,377.57. This deficiency was paid by application thereto of the foregoing amount of $2,946.15 and by payment of the balance of $191,308.22 by said predecessor executor on December 24, 1943 to Thomas H. Buckley, who was then but was not at the time the Complaint in the above-entitled action was filed, the duly qualified and acting Collector of Internal Revenue for the District of Massachusetts at said Boston. The interest of $8,377.57 was made up of two items, interest on the foregoing amount of $2,946.15 in the amount of $1.94 and interest on the foregoing balance of $191,308.22 in the amount of $8,375.63, and was duly paid by said predecessor executor on March 9, 1944 to Denis W. Delaney, who was then and still is the duly qualified and acting Collector of Internal Revenue for the District of Massachusetts at said Boston.

"7. The aforesaid deficiency to the extent of $174,392.01 and the aforesaid interest to the extent of $7,635.02 (rather than $7,-644.18 set forth in the plaintiff's amended claim for refund hereinafter referred to in paragraph 8) resulted from the inclusion of the value of the property held by The New England Trust Company as trustee as aforesaid by said Commissioner in the value of the gross estate of said Henry F. Sears for the purpose of computing the Federal estate tax.

"8. On March 30, 1945 the plaintiff filed with the Collector of Internal Revenue for the District of Massachusetts then in office a claim for refund of $174,391.83 estate tax and $7,673.24 interest, with interest from the dates thereof, and thereafter on November 15, 1945 the plaintiff filed with said Collector an amended claim for refund of the aforesaid amount of $174,392.01 estate tax and $7,644.18 interest, with interest from the dates of payment thereof. True copies of said claim for refund and said amended claim for refund are annexed to the Complaint in the above-entitled action and incorporated herein by reference.

"9. By letter dated January 17, 1946 and mailed by registered mail, the said Commissioner notified the plaintiff that said claim for refund and said amended claim for refund were rejected in their entirety. A true copy of said letter (except that the date of January 17, 1946 is omitted therefrom) is annexed to the Answer in the above-entitled action and incorporated herein by reference."

The sole issue in this case is whether by reason of the power reserved by the grantor in the fifth clause of the indenture, the corpus of this trust is taxable under Section 811(d)(2) of the Internal Revenue Code.[1]

In the fifth clause of the indenture, the grantor reserved to himself the following power: "I reserve the power from time to time by an instrument in writing signed by me to amend this trust indenture so that it will more clearly express my actual intentions if I shall consider such amendment advisable, as to which I shall be the sole judge."

The plaintiff contends that the only power reserved by the settlor by this language was a power to clarify the meaning of the trust provision from time to time, so as to more clearly express the actual intentions he had at the time he created the trust,

[1] "Sec. 811 Gross estate

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States— * * *

"(d) Revocable transfers * * *

"(2) Transfers on or prior to June 22, 1936. To the extent of any interest therein of which the decedent has at any time made a transfer, * * * by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, * * * either by the decedent alone or in conjunction with any person, * * * to alter, amend, revoke * * *." 26 U.S.C.A. Int.Rev.Code, § 811(d)(2).

and not a power to alter the manner in which the principal and income was to be held or distributed.

He further contends that, since the language of this paragraph is clear and unambiguous, the settlor had no power to so amend the trust as to shift any economic benefits. He argues that, even if it be found that the settlor actually made several amendments which shifted the economic benefits, such actions cannot be considered as proof of his power to so amend, or as evidence of the meaning of the reserved power.

Counsel for the government contends, in effect, that the language of the reserved power, when considered in its relation to the indenture as a whole is ambiguous, and that when considered in the light of the subsequent amendments made by the settlor, constituted a power sufficient to allow the settlor to shift economic benefits. Interpreted in this manner, this power, he claims, renders the corpus of the trust taxable for purposes of estate taxation.

■ In interpreting a trust to determine what rights are created or what powers are reserved, the intent of the settlor is controlling. Higgins v. White, 1 Cir., 93 F.2d 357; Brewer v. Hassett, D. C., 49 F.Supp. 501; 2 Scott on Trusts, § 164.1; Gorey v. Guarente, 303 Mass. 569, 22 N.E.2d 99.

■■ Where the provisions of a trust indenture are unambiguous, they are controlling in determining the intention of the settlor. Brewer v. Hassett, supra; 2 Scott on Trusts, § 164.1. In such a case, extrinsic evidence is not admissible, in the absence of fraud or mistake, to alter or vary the terms of the indenture. 2 Scott on Trusts, § 164.1. But, the instrument "must be interpreted with a view to all the material circumstances of the parties at the time of its execution, in the light of the pertinent facts within the knowledge of those who signed it and in such manner as to give effect to the main end designed to be accomplished by the instrument." Eustace v. Dickey, 240 Mass. 55, 132 N.E. 852, 857. See also Attorney General v. Eustace, 240 Mass. 88, 93, 132 N.E. 865; Brewer v. Hassett, supra; Dumaine v. Dumaine, 301 Mass. 214, 16 N.E.2d 625, 118 A.L.R. 834;

Attorney General v. Armstrong, 231 Mass. 196, 120 N.E. 678.

■ However, where a provision of the indenture is ambiguous or uncertain in its meaning, resort may be had to extrinsic evidence to determine the intent of the settlor when he created the trust. 2 Scott on Trusts, § 164.1. In such a case, the circumstances existing at the time of the creation of the trust, and also the settlor's conduct subsequent to the creation of the trust are material and admissible. 2 Scott on Trusts, § 164.1.

In the trust indenture made by the settlor in the instant case, he assigned and transferred valuable securities to an individual and a corporate trustee on certain trusts.

By paragraph First he provided that:

1. The net income was to be accumulated for his 3 children, then aged 10, 8 and 2 years respectively, until each respectively attained the age of 21 years, with a provision for payment to the settlor, or his wife if he were deceased, or to any guardians of any of his children in the event that both the settlor and his wife were deceased, of so much of said accumulation as might be needed for maintenance or education of any of the minor children.

2. After each child respectively became 21 years of age, he or she was to receive quarter-yearly payments of one-third of the net income during his or her natural life.

3. If any child died before becoming 21 years of age, leaving no issue surviving, his or her proportion of the trust property was to be held for the surviving child or children of the settlor, and the net income thereof was to accumulate for such child or children if under 21, or if the surviving child or children were 21 years of age, his or her proportion of the net income that was accumulating for the deceased child was to be paid over to him or her as if forming part of his or her original share.

4. If any child died before becoming 21 leaving issue surviving, such issue was to receive the share of the principal of the trust property held for the benefit of such deceased child.

5. If all the children died before reaching 21, without issue surviving, the trust

was to terminate and all the trust property was to be conveyed to the settlor, if living, or if he were dead, to his devisees.

6. On the death of any child after attaining the age of 21, the proportionate part of the principal of the trust property as then existing, the income of which had been payable to such child, was to be conveyed or paid over to the executor or executors of the will of such child, if he or she should die testate, or, if he or she should die intestate, to his or her administrator or administrators as a part of the estate of such child, in the same manner as if he or she had died possessed of the same.

7. The decision of the trustees as to what constituted net income was to be conclusive and binding on all persons interested.

By paragraph Second, he provided for broad powers of management to be vested in the trustees freeing them from liability except for their own wilful defaults.

By paragraph Third, he provided for payment by the trustees of all necessary and proper expenses incurred by them in the performance of their duties and for compensation for their services.

By paragraph Fourth, he added spendthrift trust provisions.

By paragraph Fifth, he provided for the appointment of successor trustees, giving such successor trustees the same powers as the original trustees.

In this paragraph also he reserved the disputed power involved in this controversy, "I reserve the power from time to time by an instrument in writing signed by me to amend this instrument so that it will more clearly express my actual intentions if I shall consider such amendment advisable, as to which I shall be the sole judge."

Examining this language in the light of other provisions of the instrument, I am not convinced that the only power of amendment that the settlor intended to reserve to himself was a power to clarify the meaning of the trust provisions.

By the terms of the trust indenture, as summarized above, it is evident that the settlor had clearly expressed his present intentions as to the manner in which he intended the beneficiaries of the trust to participate. He provided for the interests of his children, as well as future interests and the quantum of such interests. He adequately provided for the management of the trust and the succession of trustees.

It is apparent that he had anticipated and provided for the future eventualities normally foreseeable. It seems entirely reasonable that at the time of the execution of the trust indenture, he had exhausted his ideas and intentions concerning the control, management and enjoyment of the trust, and that the terms of the trust fully expressed his present purposes and intentions.

It is, therefore, my opinion that the language of the contested power lends itself more logically to the conclusion that the settlor reserved this power in order to retain control over the trust to meet unanticipated future contingencies or economic changes, rather than to merely make clarifying changes to express his original intentions, as the plaintiff contends. Otherwise, if we follow the argument of the plaintiff, we must practically reject this power as surplusage—a construction which is to be rejected if any other course is rationally possible. National Shawmut Bank v. Joy, 315 Mass. 457, 466, 53 N.E.2d 113.

The fact that the settlor provided in this power that he was to be the sole judge of the advisability of amending the indenture, seems quite persuasive in this regard. Since the trustees were charged with the duty of administering the trust funds, ordinarily they, rather than the settlor, would be expected to realize the need for any clarification of the terms of the trust. They also would be charged with the duty of interpreting the terms of the trust, aided, if necessary, by a court of equity. In such a case, the intention of the settlor at the time he created the trust would be the chief factor in interpreting any clause of the instrument, rather than any statement of the settlor made at a subsequent time.

In other words, the wording of the power as a whole, when considered in relation to the circumstances surrounding the creation of the trust, and in relation to the rest of the trust indenture, lead to the opinion that the settlor did not mean to reserve an un-

necessary and fruitless power to amend, but actually a substantial power to control the administration of the trust and to shift economic benefits thereunder whenever he might desire to do so in the future.

Furthermore, if we consider what the settlor actually did by way of exercising this power to amend, we have more evidence to show that he intended to reserve, not a mere power to explain language, but a power to make substantial alterations in the whole indenture.

■ While it is true that what the settlor actually did by way of amendment at a subsequent time is not evidence of the power he had reserved to himself, nevertheless, it is some evidence of his intention at the time of the creation of the trust. 2 Scott on Trusts, § 164.1.

The settlor amended the indenture five times before his death. As a preamble to each amendment, he stated that he was acting under the power reserved in the trust indenture. By some of these amendments, he actually shifted some of the economic benefits of the trust property. By the Second, Third and Fourth Amendments, respectively, he changed the value of the benefits that each child was to receive on reaching the age of 21, and by the Fifth amendment, he provided that on the death of any of his children intestate, after reaching 21, the share of the principal held for such child was to pass to the issue of such child, whereas formerly it was to have passed to the heirs of such child.

Since in making each of these amendments, he stated that he was acting within the reserved power, it seems likely that when he reserved this power, that he intended to be able to make such changes which would carry out any substantial ideas he might have in relation to the relative benefits of the beneficiaries or future interest holders.

■ It is, therefore, my opinion, after considering the language of the original indenture, the circumstances of the settlor and the beneficiaries at the time the trust was created, and the interpretation placed on this reserved power by the settlor when he added the amendments, that the settlor intended to reserve to himself a power to amend the trust as he might see fit in the future; that is, in order to make it conform to his subsequent intentions.

So reviewed, the power as set forth in the trust instrument consisted of a power to amend, broad enough to make the corpus of the trust taxable as a part of the estate of the settlor for estate tax purposes, under Section 811(d)(2) of the Internal Revenue Code. Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed 880; Chickering v. Commissioner, 1 Cir., 118 F.2d 254, 139 A.L.R. 508; Bodell v. Commissioner, 1 Cir., 138 F.2d 553, 150 A.L.R. 1262; Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257; Dort v. Helvering, 63 App. D.C. 98, 69 F.2d 836; Welch v. Terhune, 1 Cir., 126 F.2d 695; Estate of John Storer, 41 B.T.A. 1156; Commissioner of Internal Revenue v. Chase National Bank of New York, 2 Cir., 82 F.2d 157.

■ The plaintiff further argues that if the amendments to the trust indenture were within the power reserved by the grantor, such power was exhausted by its exercise so that at the time of the grantor's death the enjoyment of the beneficiaries' interests in the trust was not subject to any change.

Construing the power, as I have, to be a power to modify the provisions of the trust instrument from time to time as the settlor might see fit, I cannot say that the settlor had completely exhausted his power by its exercise five times. His right under the power, as I construe it, is to make the trust correspond with his various intentions. If at the time of his death, the settlor wished to change the beneficial interests, he could have done so by another amendment.

The cases of Estate of Horatio Gates Lloyd, 47 B.T.A. 349, and Estate of I. H. Burney, 4 T.C. 449, cited by the plaintiff are distinguishable from the present case.

In the Lloyd case, the law of Pennsylvania that the exercise of a power to alter, amend or revoke exhausts such power was the basis of the decision.

In the Burney case, the beneficiaries under the trust were the settlor's wife and his five brothers. Acting under a "privilege of changing the relative interests of the different beneficiaries at any time by reducing

the interest of some and adding to the interest of others", the settlor instructed the trustee to make "a first and final distribution" of cash to his five brothers, "liquidating their entire interest in the trust." The court held that this action when carried out by the trustee exhausted the settlor's power to change "the relative interests of the different beneficiaries at any time by reducing the interest of some and adding to the interests of others", because it eliminated all of the beneficiaries but one, the settlor's wife, thus rendering the power by its very nature, incapable of being exercised again.

An order shall be issued for judgment for the defendant.