Estate of Emeline L. Green, Louis R. Kiernan, Adm. w. w. a., v. Commissioner.
Estate of Emeline L. Green v. Commissioner
Docket No. 698.
United States Tax Court
1945 Tax Ct. Memo LEXIS 279; 4 T.C.M. (CCH) 286; T.C.M. (RIA) 45086; March 3, 1945
Joseph L. Cain, Esq., 38 Memorial Drive, Cambridge, Mass., and O. Walker Taylor, Esq., for the petitioner. R. H. Transue, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: This proceeding involves a deficiency in Federal estate taxes in the amount of $9,109.08. The pleadings raise two issues: (1) whether certain transfers of real estate made by the decedent in her lifetime should, for estate tax purposes, be deemed to have been made in contemplation of death or intended to take effect in possession and enjoyment *280 at or after death and hence included in the gross estate under section 811 (c) of the Internal Revenue Code; and (2) the fair market value of the transferred real estate and of other parcels of real estate, admittedly includible in gross estate. Findings of Fact Emeline L. Green, hereinafter referred to as the decedent, a resident of Winthrop, Massachusetts, died testate March 16, 1939. She was the surviving widow of Jeremiah Green, who died testate July 19, 1929. The petition is brought by the duly appointed administrator. An estate tax return was filed with the collector for the district of Massachusetts. At the time of the death of Jeremiah Green he owned outright or jointly with his wife several parcels of real estate located in Cambridge and Winthrop, Massachusetts, having a value of $143,187 as shown on the Federal estate tax return filed by his estate. All of these properties passed to his wife, the decedent here, under the residuary clause of his will. She acquired no other real property during her lifetime. The property acquired by the decedent under her husband's will consisted of tenement houses and other rental property, vacant lots and *281 summer cottages. During her husband's lifetime he had looked after the property, provided for its maintenance, collected the rents and adjusted the problems with tenants. After his death these duties devolved upon the decedent and were burdensome to her. In 1929, shortly after the death of her husband, decedent told her son, Oliver L. Green, that she planned to make distribution of most of her property by deed. About the same time she also told her daughter, Emeline, that she planned to distribute the property among the children right away to get rid of the burden of looking after it. In the early part of 1930 decedent visited Rutherford E. Smith, who had been her husband's attorney, and had several telephone conversations with him in which she expressed a desire to be relieved of the care and responsibility of looking after some of the tenement property. She stated that she would like to distribute to the children at that time certain parcels of the real estate and "let them have it." In the fall of 1930 Smith drafted a deed which the decedent executed on November 22, 1930, whereby she conveyed to her daughter, Emeline L. Green, several small pieces of real estate located in *282 Winthrop, Massachusetts. The description of this property and its value at the date of decedent's death was as follows: Description
Value
63 Temple Avenue
$3,000
78 Highland Avenue
700
101 Cliff Avenue
2,000
90 Highland Avenue
6,500
93 Cliff Avenue
3,500
99 Cliff Avenue
4,500
82 Highland Avenue - Lot 5 vacant
700 This deed was delivered to Emeline L. Green about the time it was executed; but it was not recorded in the Suffolk County registry of deeds until March 25, 1939. On January 24, 1931, the decedent executed and delivered to the grantee a deed which was recorded in the Suffolk County registry of deeds March 27, 1939, whereby she conveyed to her daughter, Emeline L. Green, two pieces of real estate located in Cambridge, Massachusetts. The description of this property and its value at the date of decedent's death was as follows: Description
Value
252-256 Harvard Street
118-126 Prospect Street
$14,000
On February 24, 1931, the decedent executed and delivered to the grantee a deed which was recorded in the Suffolk County registry of deeds March 25, 1939, whereby she conveyed to her daughter, Emeline L. Green, certain real estate *283 located in Winthrop, Massachusetts. The description of this property and the value at the date of decedent's death was as follows: Description
Value
248 and 260 Revere Street
$8,000
On November 20, 1934, the decedent executed and delivered to the grantee a deed, which was recorded in the Suffolk County registry of deeds on March 25, 1939, whereby she conveyed to her son, Oliver F. Green, as a birthday present, four small parcels of real estate located in Winthrop, Massachusetts. The description of this property and the value thereof at the date of the death of decedent was as follows: Description
Value
Pt. Shirley, Block 72, Lots 22 & 23
Adams St, Block 72, Lots 24-26
Taft Ave., Block 72, Lot 29, Unimproved
Taft Ave., Block 72, Lots 41 & 42
$6,500
On August 6, 1938, the decedent executed a deed, which was recorded in the Suffolk County registry of deeds March 27, 1939, whereby she conveyed two houses in Cambridge to Emeline L. Green, in trust for Anna K. Green, an incompetent daughter of decedent, whom someone has "to take care of during her lifetime." The deed was subsequently delivered by the decedent to the trustee. The property described *284 in the deed and its value at the date of decedent's death was as follows: Description
Value
2269-2275 Massachusetts Ave.
11-15 Dover St., Block 182, Lot 7
$15,000
On August 6, 1938, the decedent executed two deeds which were recorded January 23 and March 17, 1939, respectively, whereby she conveyed to her son, Richard W. Green, certain parcels of real estate located in Winthrop, Massachusetts. The property described therein and its fair market value at the date of decedent's death was as follows: Description
Value
79 Highland Ave., Block 18, Lot 2
$ 6,500
Crest Avenue, Block 16, Lots 1-3
16,000
The three deeds executed on August 6, 1938, were prepared by Theodora M. McMahan, a lawyer who had known the decedent since they were students together in law school. When the deeds were executed the decedent said she would see that they were delivered. The attorney advised her at that time that it might be a mistake to deed her property to her children and suggested that she reserve a life interest in it. The decedent refused to do so, stating that she wanted "to give it to them outright." The decedent did not reserve any interest whatever in the *285 properties conveyed to her children by the deeds referred to above. The transfers made by decedent to her children as shown above were gifts and none was made for an adequate and full consideration in money or money's worth. Inasmuch as some of them were made after the effective date of the Revenue Act of 1932 gift tax and donee information returns should have been filed (Title III, Rev. Act of 1932. Sections 501 et seq.). No such returns were filed. Sometime in September 1929 Oliver F. Green. decedent's son, undertook the management of the Winthrop properties for his mother. He continued to manage these properties after some of them had been conveyed to his sister. He collected the rents, took care of the repairs, adjusted the problems with the tenants and paid the taxes. The net rental income was given partly to his mother and partly to his sister, Emeline, who deposited it in a safe deposit box in the Old Colony Trust Company. The decedent never told Oliver that she wanted the income from any of the transferred properties during her lifetime. No net income was realized from the properties transferred to Emeline on November 22, 1930. Rents from the Cambridge properties were *286 collected by a real estate agent who sent a monthly statement of the rents to the decedent together with a check for the rents collected. Emeline L. Green collected the rents on some of the properties. Some, but not all, of the tenants were informed that the properties had been transferred to her. Taxes were levied on the properties standing in the decedent's name throughout the years 1930 to 1939 and checks in payment were drawn on Old Colony Trust Company by Oliver F. Green from rental funds which he had collected. There was no segregation of the properties on the tax bills. The taxes for the Cambridge properties were included in one bill sent to decedent through the real estate agent. Emeline Green paid the taxes on the properties transferred to her by depositing the amount in her mother's bank account. In 1930 when the decedent was going to take a trip to visit her son, then in the army, she visited her attorney and told him that she had not definitely decided on the conveyance of various properties to her children but that she would like to have a will drawn up. A will was drawn and executed November 22, 1930. Therein, after disposing of certain personal property and making *287 charitable bequests, she devised one or more parcels of real estate to each of her children, except one, and by a residuary clause provided that the balance of her estate be divided equally among her seven children. By a codicil executed November 20, 1934, she revoked the personal and charitable bequests and otherwise ratified and confirmed the original will. The will did not specifically describe all of the real estate of which the decedent was then possessed. By her will decedent appointed her son Oliver F. Green as executor; but a dispute arose among some of her heirs and the Probate Court of Suffolk County, Massachusetts, appointed Louis R. Keirnan as administrator "with the will annexed." Shortly after his appointment the administrator filed a petition in equity, at the instigation of some of decedent's children, asking that there be brought into the estate and made a part thereof, those parcels of real estate which the decedent had transferred by deed during her lifetime. The respondents named in the petition were the grantees shown above. At the trial of the case, which consumed a day, the parties were represented by counsel, evidence was introduced, including evidence on *288 the issue of delivery of the deeds, and at the conclusion of the hearing the court entered an order dismissing the petition. Decedent filed income tax returns for the years 1930, 1935 and 1936 reporting gross rentals in the amounts of $17,608.39, $15,083 and $13,676 respectively, net income from rents for 1930 of $811.69 and net loss for the years 1935 and 1936 of $4,585.81 and $5,287.04, respectively. Deductions for depreciation were claimed in these returns, the basis of the property being shown as $107,050 in 1930 and $107,650 in 1935 and 1936. In her 1930 return decedent claimed a deduction for property tax in the amount of $6,855.20 and in her 1935 return a similar deduction was claimed in the amount of $7,276.41. Decedent was assisted in the preparation of her income tax returns for the years 1935 and 1936 by a certified public accountant who had been employed by her for that purpose. Decedent's daughter, Emeline, filed Federal income tax returns for the years 1935 to 1938, inclusive, reflecting the following income and deductions: Income
Deductions
Bank
Other
Contri-
Year
Dividends
Deposits
Bonds
Income
Total
Taxes
butions
Total
1935
$1,823.20
$ 880.00
$2,703.20
$143.70
$100.00
$243.70
1936
$250.00
1,558.20
940.00
$113.30
2,861.50
100.00
111.00
211.00
1937
250.00
471.50
1,575.00
2,296.50
138.85
100.00
238.85
1938
250.00
110.58
1,575.00
1,935.58
120.45
100.00
220.45
*289 Emeline did not report any net income from rents nor did she claim any deductions for depreciation or property taxes in her Federal income tax returns for the years 1935 to 1938, inclusive. She reported gross and net income from rents during later years as follows: Gross income
Net income
Year
from rentals
from rentals
1939
$4,518.25
$ 7.07
1940
5,993.60
(Loss) 2,020.34
1941
(Loss) 1,218.59
1942
(Loss) 1,665.62
The decedent, at or about the time the deeds were delivered to Emeline and at other times, told her to record them; but Emeline stated that she did not wish to do so because she had had difficulty and dissension with some of her brothers and sisters over bequests to her in her father's will and she did not want to have any more while her mother was alive. The decedent was strong physically and keen mentally. Her hearing and eyesight were good and her hands nimble. She did a great deal of knitting and crocheting. Shortly before she died she knitted a bedspread for her daughter-in-law and a dress for herself. She drove her own car almost daily and frequently took long automobile trips. She operated her own typewriter and corresponded *290 regularly with her son, Brigadier-General Green, who was in the United States Army. Her letters to her son were cheerful and did not suggest any contemplation of death. She was never seriously ill and did not have a doctor during the period from the death of her husband in 1929 until the illness resulting in her death in 1939. During her last illness she was confined to her bed only four days. During the summer of 1938 she planned to take a trip to Dublin, Ireland, with her daughter, Emeline, but did not go because her son secured three weeks' leave and came up from Washington to visit her. The transfers of the property here in issue were not made in contemplation of death. Property located at 163 Grovers Avenue was included in gross estate at a value of $3,000 and property referred to as 45 Temple Avenue, Winthrop, Massachusetts, was included in gross estate at a value of $4,000. In determining the deficiency in tax respondent increased the value of each by $1,000. The value at the date of decedent's death of the first-mentioned property was $4,000 and of the last-mentioned $5,000. Two small properties owned by the decedent at the time of her death were inadvertently omitted *291 from the estate tax return. The description of these properties and their fair market value at the date of decedent's death is as follows: Value at Date of
Description
Decedent's Death
Lots 6 and part of Lot 7, Highland
Avenue, Winthrop, Mass.
$400.00
Lot 3, 89 Highland Ave., East Win-
throp, Mass.
600.00
Lot 5, Grovers Avenue, East, consisting of a triangular tract of land containing 5,118 square feet, was determined by the Commissioner to be in the same category as the property referred to in the preceding paragraph and was included in gross estate at a value of $1,000. The inclusion of this property was erroneous inasmuch as it had been included in the valuation of adjoining property. The estate tax return filed by the administrator disclosed a gross estate of the value of $45,500 and total deductions, including specific exemption, in the amount of $48,927.17. In the notice of deficiency the respondent determined a gross estate of the value of $142,393.59. In arriving at this amount he included the real property transferred by the decedent to her children, which he valued at $90,900. Other adjustments made in the notice of deficiency are not questioned. *292 Opinion The question is essentially one of fact. The evidentiary facts have been set out fully in our findings. Respondent, having ascertained some of them, concluded that the transfers made by the decedent to her children had been made in contemplation of, and were intended to take effect in possession or enjoyment at or after, death. He therefore included the value of the property transferred in gross estate under section 811 (c), I.R.C.
It cannot be gainsaid that some of the facts tend to support respondent's conclusion. Perhaps the most significant - in any event they are the ones stressed by him upon brief - are that the deeds were not filed of record until after decedent's death; that gift tax and donee information returns were not filed; and that income from rents was reported by the decedent rather than by the daughter, to whom, individually and as a trustee for her incompetent sister, some of the transfers had been made. Notwithstanding these facts we have concluded that the transfers were not made in contemplation of death. Some of the circumstances supporting this conclusion will be stated although no attempt will be made to rationalize it completely *293 or to assign to any particular evidence the precise weight which has been given to it. The phrase "in contemplation of death", as used in the statute, means that the thought of death is the impelling motive of the transfer. United States v. Wells, 283 U.S. 102; Igleheart, et al., v. Commissioner, 77 Fed. (2d) 704. In other words that it is of the sort which leads to testamentary disposition. In determining motive consideration should be given to the condition of the mind and body of the transferor, to his or her age, to the reason for the transfer, expressed or implied, and to all of the surrounding facts and circumstances, especially those which cast light upon whether the transfers were "related to purposes associated with life, rather than with the distribution of property in anticipation of death." United States v. Wells, supra. All of the credible evidence indicates clearly that one of the situations referred to by the court in the Wells case - conceded by the government there to indicate that the transfer was not in contemplation of death - is present here, i.e. that the transfers were made "for the purpose of relieving the donor of *294 the cares of management." Several of the witnesses so testified, including at least two who had no interest in the outcome of this controversy. The statements made by the decedent were to the effect that she wanted to "get rid of it", to "let them [her children] have it", to "give it to them outright"; and there is no evidence that she attached any strings to the gifts. The condition of her health was excellent, she was mentally alert, and nothing in the record suggests that she was motivated by thought of death. We have therefore concluded that the transfers in question were not made in contemplation of death. The failure to file the deeds during the lifetime of the donor is, of course, a circumstance to be considered. The explanation given by the named grantees is plausible. Some preference was undoubtedly given to them, which, to say the least, probably did not make the relationship between them and their less-favored brothers and sisters more cordial. Some dissension had developed after the probate of the father's will. It was felt that withholding the deeds from record might spare the mother some criticism. Therefore, the grantees, notwithstanding the specific instructions *295 of decedent, chose to hold the deeds, without recording them, until after her death. The other circumstances relied upon by the respondent have also been considered. Failure to file gift and donee information returns is not particularly significant. Several of the deeds were executed before the gift tax law became effective. Whether the government was thereby deprived of a tax is not before us nor is it decided. It may well be, as suggested by counsel for the petitioner, that the filing of returns would have been "only a formality" and that no tax would have been due. Nor does the subsequent handling of the rental income indicate that the decedent considered the property to be hers after the deeds were delivered. The daughter collected some of the rents and paid some of the taxes. The evidence indicates that the boys did likewise upon the property which had been conveyed to them. The net rental income was not substantial, as is indicated by the returns for 1935 and 1936, prepared by a certified public accountant after an analysis of the books and records. In a different setting the apparent commingling of the rental income might be significant. Here, however, the evidence shows *296 that decedent and her two unmarried daughters, one of whom was incompetent, lived together in a home which had been conveyed to the competent daughter in trust for the other. A son, who resided in the same community, attended to most of the details of looking after the property, turning over to his sister and his mother, more or less indiscriminately, what he conceived to be the net rental income but what in fact was probably little else than the depreciation reserve if proper accounts had been kept. Regardless of whether the mother or the daughter received the funds they were largely used in the payment of property taxes and living expenses. A portion of the rent came from property which had not been deeded and some of the property conveyed to the daughter was not incomeproducing. The fact that some of the income from property transferred might possibly have been used for the support of the transferor should not, in our judgment, be given the significance respondent places upon it - i.e. as proving that the grantor reserved the income for life. The deeds contained no reservation; nor is it shown that any understanding existed between the grantor and the grantees that part of the *297 income should be turned over to her. But if conclusion were justified that the several deeds executed prior to the effective date of the Joint Resolution of March 3, 1931 were subject to such reservation, our decision would still be for the petitioner; for the resolution is not to be applied retroactively. Hassett v. Welch, 303 U.S. 303. Cf. Estate of Sally Houston Henry, 4 T.C. 423, (December 7, 1944). In view of the conclusion which has been reached upon the principal issue, the value of the property transferred, to which much of the evidence was addressed, need not be determined. The evidence pertaining to the valuation of the properties located at 163 Grover Avenue and 45 Temple Avenue is conflicting. In our judgment petitioner has not proved that the respondent and his appraisers placed excessive values upon them. The two small properties inadvertently omitted from the return have been determined to have lesser values than placed upon them by the Commissioner. Since the inclusion of the triangular tract, referred to as Lot 5, Grovers Avenue, East, has been shown to be erroneous, the value determined by the Commissioner for it should be excluded in *298 recomputing the deficiency. Decision will be entered under Rule 50.