Estate of William M. Hager, Deceased, Anna E. Hager and Janet Hager MacAllister, Executors v. Commissioner.
Estate of William M. Hager v. Commissioner
Docket No. 6871.
United States Tax Court
1946 Tax Ct. Memo LEXIS 38; 5 T.C.M. (CCH) 972; T.C.M. (RIA) 46266; November 13, 1946
Guy W. Gordon, Esq., 11 Park Place, New York, N. Y., and George A. Reiss, Esq., for the petitioners. Francis X. Gallagher, Esq., for the respondent. MURDOCK Memorandum Opinion MURDOCK, Judge: The Commissioner determined a deficiency of $36,603.05 in estate tax. Two issues are presented for decision. One is whether the Commissioner erred in determining the fair market value at the date of the decedent's death of his interest in his residence. Another is whether the Commissioner erred in including in the gross estate property transferred in trust by the decedent during his lifetime. All of the facts in the record have been stipulated and agreed to by the parties, except as to the value of the residence. The stipulation is adopted as *39 the findings of fact and it is further found as a fact that the fair market value of the residence at the date of the decedent's death was $35,000. The Commissioner, in determining the deficiency, added $4,600 to the net estate with the explanation that the decedent's interest in his residence at 39 Afterglow Way, Montclair, New Jersey, was $20,700, whereas it had been returned at only $16,100. The parties are agreed that the residence belonged to the decedent and his wife in certain proportions. Our finding that the value of the entire residence property at the time of his death was $35,000 disposes of one issue without further discussion. [The Facts] William M. Hager died on July 1, 1942. The estate tax return was filed with the collector of internal revenue for the fifth district of New Jersey. The decedent and his wife, Anna, established five trusts in 1924 and each conveyed to those trusts at that time 200 shares of American Locomotive Company common stock. No additional transfers of property were ever made to the trusts. The fair market value of the 400 shares of American Locomotive Company stock at the time transferred to the trusts was $42,400. The original 400 *40 shares of American Locomotive stock were sold by the trusts and the proceeds were reinvested in other securities. Numerous purchases and sales were made from time to time. The value of the securities in the five trusts at the time of the decedent's death was $122,836.07. One half of that amount, or $61,418.04 was attributable to the original contribution of the decedent to the five trusts. Each trust was for the benefit of a child or a grandchild of the grantors. They were "spendthrift" trusts. The decedent was named trustee in each trust. Each trust provided that a successor trustee could be appointed in case the original trustee should cease to act for any reason. Each trust was to continue during the life of the beneficiary, and at his death the corpus of the trust was to be disposed of as the beneficiary should direct by his will. If that failed, the disposition of the corpus was covered by other provisions. The trust income and corpus were completely disposed of so that no part of either would ever return to the decedent. The trusts were irrevocable. The grantors retained no power to amend, modify, or change the trusts. Paragraph 5 of each trust instrument was as follows: *41 (5) As between the beneficiary of this trust and those entitled to the remainder hereunder, any increment, however accruing, to the value of any investment constituting a part of the principal of the trust shall be for the benefit of those entitled to the remainder except that if any such security, to the value of which there shall be any increment, by way of increase of market price or otherwise, shall be sold or otherwise disposed of during the period of the trust, such increment, in the discretion of the Trustee, may be either treated as income to be disposed of in accordance with the terms hereof, or be retained as a part of the corpus of the trust. The following from paragraph 8 of one of the trusts is typical of a similar provision in all the trusts: (8) The Trustee may from time to time pay over to our said son, or expend for his benefit, so much of the income from the trust estate as in the sole judgment of the Trustee it shall be advisable so to do. So much of such income as shall not be so paid or expended shall be accumulated as a part of the trust estate, but at any time and from time to time after there has been any such accumulation of income, the Trustee may either *42 pay the whole or any part thereof to our said son or expend it for his benefit - it being the intent that the income from the trust estate not actually paid over to or expended for the benefit of our said son shall not become irrevocably a part of the corpus of such estate, but may thereafter at any time, and from time to time, be by the Trustee either paid over to him or expended for his benefit. * * * The securities in the five trusts were transferred on January 9, 1941, to the Marine Midland Trust Company to be held in a custodian account. The Commissioner, in determining the deficiency, added to the value of the net estate $122,836.07 with the explanation: It has been determined that property transferred by the decedent on January 9, 1941 to The Marine Midland Trust Company of New York, under the name of William M. Hager, Special Account, is includible in the gross estate at a valuation of $122,836.07. The Commissioner, by the stipulation, has conceded that only one half of the value of the properties in the five trusts at the date of the decedent's death should be included in his gross estate since he contributed only one half in the first place and the other half was *43 contributed by his wife from her separate property which had not come from him. [Opinion] The Commissioner now makes only one argument in support of his determination in including a part of the trust property in the gross estate. That argument is based upon the provision of paragraph 5 in each trust to the effect that any increment in the value of any security in the trusts realized by a sale or other disposition of the security could either be treated by the trustee in his discretion "as income to be disposed of in accordance with the terms hereof, or be retained as a part of the corpus of the trust." The argument is that the decedent by reason of that provision retained to himself the power to determine how much, if any, of the profit upon each sale would go to a life tenant as income and how much, if any, would become corpus and be held for the remainderman. His conclusion, apparently, would be that that power was terminated by the decedent's death and, therefore, the transfers in trust were ones in which the decedent had retained for his life the right "to designate the persons who shall possess or enjoy the property or the income therefrom" within the meaning of section 811 (c), Internal Revenue Code *44 . The petitioners concede that income of these trusts not immediately distributed did not become irrevocably a part of the corpus but could be distributed subsequently as income, and that capital gains, being a form of income, could be distributed or retained and, if retained, could be distributed later at the discretion of the trustee. They argue, however, that the decedent's death did not change the situation or pass assurance of title to anyone because the successor trustee would have rights similar to those of the decedent, and any accumulated income would still be subject to the same uncertainty. The increment in value of securities which had been realized through sales or other dispositions represented a large part of the trust funds at the date of the death of the decedent. Those increments represented income of the trusts. The decedent retained for his life the power to designate whether that portion of the trust property would go to the life beneficiaries or to the remaindermen. They were different persons. It is immaterial that a successor trustee had a similar power after the decedent's death. Est. of John H. Storer, 41 B.T.A. 1156. It is likewise immaterial *45 that he retained the power as trustee rather than as settlor. Welch v. Terhune, 126 Fed. (2d) 695. It would thus appear that one half of the value of the trust property should be included in the gross estate under section 811(c). However, both parties have overlooked the fact that these trusts were irrevocable and were created prior to the Joint Resolution of March 3, 1931. The Joint Resolution incorporated in the law for the first time the provision which includes in the gross estate property transferred in trust where the grantor has retained for his life the right to designate the persons who shall possess or enjoy the property or the income therefrom. It has been held that the intention of Congress was to apply that provision prospectively only and not to irrevocable trusts created prior to the enactment of the law. Hassett v. Welch, 303 U.S. 303. Furthermore, the Commissioner's own regulation applicable to the taxable year here in question provides that a transfer of the kind here involved, which does not fall within any other provision of section 811, is to be included in the gross estate only if the transfer was made "after 10:30 p.m. Eastern Standard *46 Time March 3, 1931." Regulations 105, section 81.19. Here no transfers were made after that date. This very same question has been considered and decided adversely to the Commissioner in the recent case of Estate of Milton J. Budlong, 7 T.C. 756 (Sept. 19, 1946). We hold for the petitioner on this point. Decision will be entered under Rule 50.