**Sidney KERN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 3621.**

United States District Court
W. D. Wisconsin.

Nov. 18, 1966.

Victor T. Wahl, of Wahl & Riley, Eau Claire, Wis., for plaintiff.

Richard C. Pugh, Acting Asst. Atty. Gen., Donald R. Anderson, Allen L. Schwait, Attorneys, Dept. of Justice, Washington, D. C., Edmund A. Nix, U. S. Atty., Madison, Wis., for defendant.

## OPINION

JAMES E. DOYLE, District Judge.

This is an action in which plaintiff seeks a tax refund of $609.94, and in which the defendant has counterclaimed for $65,831.03 in additional taxes, penalties and interest. The tax involved is the so-called cabaret excise tax imposed by Section 4231(6) of the Internal Revenue Code of 1954 (26 U.S.C. (1964 ed.), Sec. 4231(6)) (and previously imposed by Section 1700 of the Internal Revenue Code of 1939 (26 U.S.C. (1952 ed.), Sec. 1700)). The refund sought is for cabaret excise taxes, penalties and interest paid by the plaintiff for the month ending September 30, 1948, and for the month ending September 30, 1952. The counterclaim is for cabaret excise taxes, penalties and interest allegedly due for a period commencing January 1, 1948, and ending June 9, 1958.

Plaintiff has moved for summary judgment granting the prayer of his complaint for judgment against the defendant in the sum of $609.94, together with costs and with interest from and after September 7, 1962, and dismissing defendant's counterclaim upon its merits.

The theory of the motion for summary judgment is that there is no genuine issue as to the material fact that plaintiff's barroom was completely physically separated from plaintiff's danceroom, and that therefore the "amount paid for admission, refreshment, service, or merchandise" at plaintiff's establishment are not subject to the cabaret excise tax.

There is no suggestion that any significant changes occurred in the language of the applicable statutes and regulations during the period involved, and we shall therefore refer in this opinion to the versions cited, which are as follows:

Internal Revenue Code of 1954:

SEC. 4231. IMPOSITION OF TAX.

There is hereby imposed:

\* \* \* \* \* \*

(6) *Cabarets.*—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. No tax shall be applicable under paragraph (1) or (2) on account of an amount paid with respect to which tax is imposed under this paragraph.

(26 U.S.C. 1964 ed., Sec. 4231.)

SEC. 4232. DEFINITIONS.

(a) *Admission.*—The term "admission" as used in this chapter includes seats and tables, reserved or otherwise, and other similar accommodations, and the charges made therefor.

(b) *Roof garden, cabaret or other similar place.*—The term "roof garden, cabaret, or other similar place," as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a "roof garden, cabaret, or other similar place."

(c) *Performance for profit.*—A performance shall be regarded as being furnished for profit for purposes of section 4231(6) even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance.

(26 U.S.C. 1964 ed., Sec. 4232.)

Treasury Regulations 43 (1941 ed.):

SEC. 101.14. [as amended by T.D. 5192, 1942–2 Cum.Bull. 249 and T.D.

6007, 1953–1 Cum.Bull. 412] SCOPE OF TAX.

(a) (1) The term "roof garden, cabaret, or other similar place" includes any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise, except that after 10 a. m. November 1, 1951, such term does not include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would otherwise be considered as a roof garden, cabaret, or other similar place. The exception with respect to ballrooms, dance halls, or other similar places, applies only to such of those establishments which are operated primarily to furnish music and dancing privileges and where the serving or selling of food, refreshment, or merchandise constitutes in fact an incidental or subsidiary service in relation to the furnishing of music and dancing privileges.

(2) A public performance furnished at a roof garden, cabaret, or other similar place shall be regarded as being furnished for profit for purposes of this section even though the charge made for admission, refreshment, service, or merchandise is not increased by reason of the furnishing of such performance.

(b) Where music, whether by an orchestra, a mechanical device, or otherwise, and a space in which the patrons may dance is furnished in the dining room of a hotel, or in a restaurant, bar, etc., the entertainment constitutes a public performance for profit at a roof garden, cabaret, or similar place, and the payments made for admission, refreshment, service, and merchandise are subject to the tax.

(c) Amounts paid for refreshment, service, or merchandise in a room which is entirely separate from the room in which entertainment is furnished are not subject to tax, provided that the patrons in such separate room may not witness the entertainment and any door in the wall or partition separating the two rooms remains closed during the period of the entertainment except when persons pass from one room to the other.

\* \* \* \* \* \*

From the pleadings, depositions, answers to interrogatories, and affidavits, there appears to be no genuine issue as to the following facts:

From the late 1930's to the summer of 1958, plaintiff was the operator of the "400 Club." In 1948 and earlier, the 400 Club consisted principally of two large rooms, a barroom and a danceroom. The only entrance to the building was through the barroom. A kitchen and rest rooms adjoined the barroom. Service windows were present in the partition between the barroom and the danceroom. An opening in the same partition served as a passageway for patrons to pass between the two rooms.

In 1948 and prior thereto, food and beverages were served to patrons of the danceroom through the service windows opening from the barroom. Patrons of the premises could pass without inhibition from danceroom to barroom and from barroom to danceroom.

In 1948 an issue arose concerning the plaintiff's liability for the cabaret excise tax. On January 14, 1948, the Deputy Commissioner of Internal Revenue informed plaintiff that certain cabaret excise taxes were due. He cited and paraphrased the statutes and regulations quoted above, and he added:

"Since the evidence shows that patrons in the entertainment room are permitted to enter the barroom to purchase and consume refreshments and to make purchases through the service windows and that patrons of the barroom witnessed the entertainment in the entertainment room and were entitled to the privilege of entering that room to dance or witness the enter-

tainment, it is further held that additional tax is properly due."

During the year 1948 plaintiff then expended a substantial sum to alter and remodel the 400 Club.

After the remodeling and during the 1948–1958 period affected by the present action, the features which distinguished the 400 Club from its pre-1948 period were: the entrance to the Club now opened into a hallway which in turn allowed a patron to enter either the barroom or the danceroom and specifically allowed the patron to enter the danceroom without first entering the barroom. The rest rooms opened off the hallway. The service windows in the wall between the two rooms were walled up so that there was a solid, floor to ceiling wall, and the doorway between such rooms (which remained only to conform with fire regulations) was locked so that patrons of the barroom could never witness the dancing or entertainment in the danceroom, nor could the patrons of the barroom pass directly to the danceroom, nor could the patrons of the danceroom pass directly to the barroom. A door at the danceroom end of the hallway prevented persons using the hallway from witnessing the dancing or entertainment in the danceroom. A charge was made at the door to the danceroom for admission to the danceroom. A patron of the barroom could not enter the danceroom without paying this admission charge. A patron of the danceroom, once admitted, could leave the danceroom, proceed by the hallway to the barroom, and return to the danceroom by the hallway. No liquor or beer were sold in the danceroom, nor could liquor or beer be carried from the barroom into the danceroom. A soft drink and light food counter was installed in the danceroom solely for the incidental refreshment of danceroom patrons.

(At the hearing on plaintiff's motion for summary judgment, counsel for the defendant was insistent that the motion be considered only on the ground that "physical" separation is sufficient to prevent imposition of the cabaret excise tax, and that the motion did not reach the question of "operational" separation. Counsel for the plaintiff appeared to concede at the time that his motion rested on the proposition that physical separation is sufficient. This is the basis on which this court has proceeded to act on the motion. However, as is apparent from the foregoing statement of facts, certain factors are included which may be considered "operational"; for example, the charging of admissions to the dance hall, the prohibition against carrying drinks from the barroom to the danceroom, and the "incidental" nature of the soft drink and light food counter in the danceroom. We do not understand the defendant to contend that operational factors of this kind are inappropriate to the present determination; they are supported by affidavit and by deposition and no issue, genuine or otherwise, has been raised by defendant with respect to them. We understand defendant rather to contend that this motion for summary judgment has not been supported by a showing of the absence of a genuine issue as to such operational factors as possible common ownership of the barroom and the ballroom, the relative size of the receipts from each, the possible economic dependence of the danceroom operation on the barroom operation, the proportion of the barroom patrons who had previously entered the danceroom, and so on; such operational factors have not been considered in the determination of the motion for summary judgment.)

Section 4231(6) of the Code imposes the tax upon "all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit." The 400 Club was not a roof garden. If the cabaret tax is applicable it must be because the 400 Club is a cabaret or a place similar to a roof garden or a cabaret. We look to the definition in Section 4232(b) and find two sentences there. From the first sentence we learn that the term " 'roof garden, cabaret, or other similar place' * * * shall include any room in any

hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise."

■ The patrons in the barroom in the 400 Club were not afforded music and dancing privileges or any other entertainment in connection with the serving or selling of food, refreshment, or merchandise in the barroom. Therefore, it appears that the barroom was not "any room" described in Section 4232(b) of the Code.

The music and dancing privileges, and any other entertainment (except instrumental or mechanical music) afforded the patrons of the danceroom were not afforded "in connection with the serving or selling of food, refreshment or merchandise," unless this conclusion can be drawn from the fact that "a soft drink and light food counter was installed in such dance room solely for the incidental refreshment of dance room patrons."

But the second sentence of Section 4232(b) provides: "In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence [that is, the first sentence of Section 4232(b)], as a 'roof garden, cabaret, or other similar place.'" The danceroom of the 400 Club was clearly a "ballroom" or a "dance hall," and the serving of food and refreshment there was merely incidental. Therefore, the danceroom is clearly not "any room" described in Section 4232(b), unless it would be considered as a roof garden, cabaret, or other similar place "without the application of" the first sentence of Section 4232(b).

■ Thus we must inquire whether either the barroom or the danceroom of the 400 Club can fairly be "considered * * * as a 'roof garden, cabaret, or

other similar place'" by the application of standards other than those contained in the first sentence of Section 4232(b). The answer is no. Webster's New Twentieth Century Dictionary defines "cabaret" as "a restaurant or barroom with dancing and singing as entertainment; hence, entertainment of this type"; and defines "roof garden" as "the roof or top of a high building decorated as a garden and used as a restaurant, etc." These dictionary definitions are consistent with common and popular understandings of the two words. By such understanding, neither the barroom nor the danceroom of the 400 Club would be considered a "roof garden" or a "cabaret" or a "similar place."

There is to be considered the effect of Treasury Regulations 43 (1941 ed.), Section 101.14, as amended by T.D. 5192, 1942–2 Cum. Bull. 249 and T.D. 6007, 1953–1 Cum.Bull. 412. Of Section 101.-14, which is entitled "Scope of tax," only subsection (c) requires attention:

"Amounts paid for refreshment, service, or merchandise in a room which is entirely separate from the room in which entertainment is furnished are not subject to tax, provided that the patrons in such separate room may not witness the entertainment and any door in the wall or partition separating the two rooms remains closed during the period of the entertainment except when persons pass from one room to the other."

The defendant United States emphasizes that the Regulation (Sec. 101.14(c)) unmistakably infers that a cabaret or similar place may consist of more than one room. This is true. Whether the statute is susceptible of such an administrative construction is a question, but it is a question which need not detain us because of the proviso of the Regulation. That is to say, the Regulation contemplates a room in which entertainment is furnished (in our case, the danceroom) and a room "entirely separate from" the danceroom (in our case, the barroom). The Regulation declares that amounts

paid for refreshment, service, or merchandise in the barroom are not subject to tax, "provided that the patrons in such separate room [the barroom] may not witness the entertainment and any door in the wall or partition separating the two rooms remains closed during the period of the entertainment except when persons pass from one room to the other." Both conditions of the proviso are met in the present case: (a) patrons in the barroom may not witness the entertainment in the danceroom; and (b) the only door in the wall separating the two rooms does remain closed at all times (except, presumably, for fire or other similar emergency). Obviously the Regulation does contemplate the application of the cabaret tax to a two-room combination, as defendant contends, but only when the rooms are so arranged that patrons in one room can witness the entertainment provided in the other (as through a plain opening, a window or windows, latticework, and so on), or when a door between the two rooms is kept open during the period of the entertainment.

All that remains is the contention of the United States that the presence of the word "entirely" in the phrase "a room which is entirely separate from the room," as the language appears in Section 101.14(c) of the Regulations, requires the construction that the two rooms must be both "physically" and "operationally" separate. The asserted authority for this view is said to be dual: the first is Revenue Ruling 56–526, CB 1956–2, p. 825; the second is a considerable number of cases in the federal courts in which the operational relationship of two rooms, as well as their physical relationship, has been examined in the course of arriving at a decision.

Revenue Ruling 56–526 does appear to assert (though there is some uncertainty in its language) that two rooms, entirely physically separate, may be considered in combination as a cabaret, if they are operationally integrated. The chief test to be applied in determining operational integration, it appears, is the *bona fides* of the charge made for admission to the room in which entertainment is provided. If the charge is equivalent to that which would be made if the entertainment room were operated without the other room, then there is a sufficient operational separation; otherwise, not.

With respect to the decisions of the federal courts, many are cited by the defendant; also, with respect to many cited by the plaintiff, defendant observes that operational factors as well as physical factors were considered by a particular court in arriving at a decision that the cabaret tax was inapplicable to the particular situation.

We appreciate that a Revenue Ruling reflects an administrative interpretation both of the statutes and of the agency's own regulations promulgated pursuant to the statute. But we cannot escape the conclusion that in Revenue Ruling 56–526 the administrator has taken flight in a manner wholly unwarranted by the Congressional action embodied in the Code, or by the earlier administrative construction embodied in Treasury Regulations, Section 101.14.

We have examined the judicial decisions cited. It does appear, as defendant urges, that when the courts have had presented to them both factors bearing upon physical separation and factors bearing upon operational separation, they have undertaken to deal with both. This circumstance alone, however, is weak authority for the proposition that in a situation in which physical separation is clearly present but operational separation is absent, the cabaret tax applies. Because of the variety of physical and operational factors present in the fact situations involved in the cases cited, it is somewhat difficult to isolate the true holdings. We fail to discern in the cases cited clear authority for defendant's contention. We are reasonably certain that no decision by the Court of Appeals for this circuit, nor by the Supreme Court of the United States, compels the construction sought by the defendant. Free of such constraint, we will not struggle to apply the tax. " * * * [I]f doubt exists as to the construction of a taxing

statute, the doubt should be resolved in favor of the taxpayer * * *." Hassett v. Welch, 303 U.S. 303, 314, 58 S.Ct. 559, 565, 82 L.Ed. 858 (1938), and cases there cited.

■ Accordingly, we adopt the view urged upon us by the plaintiff: For the application of the tax, Congress intended that there be a unity of service of refreshments, on the one hand, and enjoyment of entertainment, on the other, at the same place and at the same time—a physical and chronological unity. This unity is absent here.

For the reasons stated herein, the motion for summary judgment has been granted.